**In re TAYLOR FREEZERS OF ALABAMA, INC., Debtor.**

**Bankruptcy No. 89–13000 (11).**

United States Bankruptcy Court, N.D. Alabama.

May 4, 1990.

Harry P. Long, Anniston, Ala., for debtor.

Ronald S. Held, Anniston, Ala., and Jamie S. Cassell, for Taylor Co.

## CONCLUSIONS BY THE COURT AND ORDER ON JOINT MOTION OF DEBTOR AND TAYLOR COMPANY

L. CHANDLER WATSON, Jr.,
Bankruptcy Judge.

In the above-styled chapter 11 bankruptcy case, Taylor Freezers of Alabama, Inc., the debtor, and Taylor Company filed a joint motion to have the Court: (1) "approve compromise"; and (2) "accept executory contract as modified." Notice of this motion to parties in interest was given by the debtor pursuant to its motion "to shorten time," which was granted April 10, 1990. No objection to the motion was filed within ten days from the date of service of the notice (April 11, 1990)—the time stated in the notice; and the motion is now before the Court for a ruling.

The motion incorporates a "new" agreement between the debtor and Taylor Company, dated March 30, 1990 (copy attached). The agreement would obligate the debtor to seek to have this Court waive specified provisions of title 11, United States Code, as to future defaults by the debtor and other events which may occur and to place its imprimatur of approval upon the "new" contract. The new contract would replace a prepetition distributor or area-dealer type of arrangement between the debtor and Taylor Company (copy Taylor–Freezers letter dated April 29, 1980, attached).

The parties refer to the "original executory contract" between the parties, and the motion (in part) seeks to have the Court allow the debtor to assume "the original executory contract ... as modified." The "new" agreement, however, does not appear to trigger any flow of legal or equitable power of the Court and is mainly an effort to establish priority over other creditors for payment of the prepetition debts owed to Taylor Company, while exempting it from the stay provided by 11 U.S.C.

§ 362(a) and from any recovery of postpetition transfers under 11 U.S.C. § 549(a).

In fact, the "new" agreement would obligate the debtor to obtain the Court's blessing of postpetition payments which (it may be inferred) the debtor has already made to this creditor upon a postpetition debt of $34,000, reducing it to $22,789.41.

The request to the Court cannot be granted as "the approval of a compromise," as contemplated in Bankruptcy Rule 9019, because there is no controversy, although the motion seems to suggest that this is the type of request which is being made to the Court. (See motion title.)

As to the alternative request in the prayer—that the Court "enter an order immediately terminating the original executory contract"—this request is moot. The debtor and Taylor Company have erased the old arrangement and written a new one in its place.

■ If the joint motion and the "new" agreement were to be taken as the debtor's effort to assume an executory contract, it must be assumed from the substantial provisions for paying the prepetition debt that the prepetition contract or arrangement between the debtor and Taylor Company included the sale to the debtor of parts and equipment *on credit*. If the "new" agreement then amounts to no more than a means of "curing" a prepetition default, as would be required by the provisions of 11 U.S.C. § 365(b)(1)(A), the apparent ban on assumption found in subsection (c)(2) must be disregarded. That provision is that the debtor "may not assume ... an executory contract ... if ... such contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor...."

In *1 Norton, Bankruptcy Law & Practice* § 23.08.60, however, it is suggested that the "legislative history" shows that this ban was not intended to be applied to credit-sales contracts, because an express ban on assumption of this type of executory contract was omitted from the final draft of the statute. To the Court, this omission can best be explained otherwise. It appears that the express language was unnecessary because the general language was sufficient to include this type of contract. All of that, however, is a futile inquiry. The statutory language is not ambiguous, and the "legislative history" is irrelevant. Thus, even if the "new" agreement, despite its "cash on the barrel head" language, were considered an assumption of the old credit arrangement, the debtor's assumption of the prepetition arrangement is banned by 11 U.S.C. § 365(c)(2).

■ While the wording of the motion does not commend it for granting, it might be argued that counsels' efforts should be salvaged by treating it as a request—under 11 U.S.C. § 364(b)—that the debtor be authorized to obtain or incur unsecured credit or debt, allowable as an administrative expense under 11 U.S.C. § 503(b)(1). The new agreement, however, forecloses this possibility by calling for the debtor to "pay cash-in-advance ... for all parts and equipment purchased from Taylor [company]."

The "new" contract recites that, in June, 1989, because of its defaults in payments, the debtor "agreed that Taylor would sell to [the debtor] only on a cash-in-advance basis." From this, it appears that the old credit arrangement was gone, long before the chapter 11 bankruptcy petition was filed on November 1, 1989.

There was no evidence offered to support an affirmative finding on a "business judgment test," [1] even if the Court could construe this matter as a proceeding to assume an executory contract. Support for such a finding would have to be found from the face of the "new" agreement. While it recites that it is necessary to the debtor's business because a bank has ceased financing purchases by the debtor, the "new" agreement does not obligate the Taylor Company to provide financing for the debtor's purchases—just the opposite! The "new" agreement hardly binds Taylor Company to anything but gives it the right to

1. See *In re SIS Corp.,* 108 B.R. 608 (Bankr.N.D. Oh.1989).

appoint competitors in the debtor's territory.

If the "new" agreement were "approved" by the Court and the case were converted to one under chapter 7, the prepetition debt to Taylor Company would have been paid or any unpaid balance would have been converted into a priority administrative expense under section 503(b) of the bankruptcy statute.[2] The fattening of the creditor at the expense of the fasting of the other creditors hardly stirs enthusiastic support by the Court for this endeavor. The same may be said for its other facets which would require the debtor to "take a dive" with regard to various provisions of the bankruptcy law.

No sufficient cause for granting any relief upon the motion appearing, it is ORDERED by the Court that the motion is denied.

EXHIBIT A

Taylor® Freezer

Rockton, Illinois 61072

(815) 624-8333

April 29, 1980

Mr. Thomas M. Crumley

TAYLOR FREEZER OF ALABAMA, Inc.

800 Elmwood Avenue—PO Box 2038

East Gadsden, Alabama 35903

Dear Mr. Crumley:

Years ago Taylor Freezer abandoned use of formal Distributor Agreements on the premise that a good working arrangement between factory and distributor is difficult to confine within the margins of an agreement form. All of us have concentrated our efforts toward accomplishing a job rather than spending precious time interpreting rights and obligations from a document.

From time to time, however, the factory is asked to affirm a distributor's appointment—usually at the request of a banker, upon change of ownership, or simply because the distributor would like the assurance of seeing it in writing.

[Page 2]

Accordingly, we are sending this letter to you (and all the others) specifically acknowledging your appointment as a TAYLOR FREEZER distributor. Our expectations are few—active promotion of the Taylor line, competent service, compliance with established credit terms, and conduct of your business in a fair and responsible manner. In return, the factory pledges to produce a good line of equipment, honor our warranty commitments, nationally advertise and promote the sale of freezers, and conduct our business in a fair and responsible manner.

Of course, as independent businesses, neither Taylor nor any distributor can obligate the other party without express permission to do so, or direct the other's business or selling policies or practices.

Attached is a description of your primary area of sales and service concentration and responsibility. Both Taylor and its distributors have recognized the effectiveness of each distributor actively and aggressively extending his best efforts to promote sales and service in his own primary area. Many times, when

[Page 3]

a distributor has made a sale outside of his primary area, he has found the distributor in the other area ready and willing to undertake future warranty and service obligations for the equipment. Since service of all equipment sold is required, and is normally a component of the total selling price, the selling distributor has customarily compensated the servicing distributor for the latter's efforts. These voluntary arrangements between distributors demonstrates the fine cooperation between independent businessmen that have helped establish the name of TAYLOR FREEZER as a leader in our industry.

Many distributors use the name TAYLOR FREEZER in their company name—and we

2. *In re Mushroom Transportation Co., Inc.,* 78 B.R. 754 (Bankr.E.D.Pa.1987).

are pleased that they do. However, this tradename is the property of Taylor, and if a company ceases to be our distributor, it must discontinue use of that tradename.

The factory and distributor may review their relationship from time to time and either may terminate the arrangement upon reasonable notice for good business reasons.

[Page 4]

We are proud to call your organization a Taylor Distributor. Please sign the acceptance on the enclosed copy and return for our files. If you have any questions at all, I will appreciate hearing from you.

Best regards,

(s) Edward P. Mayer

E.P. Mayer

Executive Vice President

ACCEPTED:

(s) Thomas M. Crumley

Signature

5/28/80

Date

Mr. Thomas M. Crumley

TAYLOR FREEZER OF ALABAMA, Inc.

800 Elmwood Avenue—PO Box 2038

East Gadsden, Alabama 35903

PRIMARY SALES AND
SERVICE AREA

ALABAMA: All counties in the State of Alabama.

EXHIBIT B

MODIFICATION AGREEMENT

This Modification Agreement is entered into as of this 30th day of March, 1990, by and between Taylor Freezer of Alabama, Inc. ("TFA"), having its principal office in Gadsden, Alabama; Thomas M. Crumley ("Crumley"), owner of TFA; and Taylor Company ("Taylor"), having its office in Rockton, Illinois.

RECITALS

A. On May 28, 1980, TFA was appointed as a distributor for Taylor. That ap-pointment is evidenced by a Letter Agreement dated April 29, 1980, (the "Letter Agreement"), signed by Crumley.

B. Pursuant to the terms of that Letter Agreement, TFA agreed to actively promote the Taylor line; competently service the Taylor line; comply with the established credit terms; and to conduct business in a fair and responsible manner. The arrangement was terminable upon reasonable notice for good business reasons.

C. As of June, 1989, TFA was in breach of its obligations under the Letter Agreement in that TFA failed to comply with established credit terms which is evidenced by its failure to pay invoices on the terms specified thereon, resulting in an excessive past due balance owing thereon.

D. In June, 1989, as a result of the foregoing defaults Taylor and TFA agreed that Taylor would sell to TFA only on a cash-in-advance basis.

E. On November 1, 1989, TFA filed for relief under Chapter 11 of the United States Bankruptcy Code and, since that time, has continued to operate its business as a Debtor–in–Possession pursuant to 11 U.S.C. §§ 1107 and 1108. As of the Petition date TFA carried a past due balance with Taylor in the amount of Thirty Four Thousand Dollars ($34,000.00).

F. As of the date of this Agreement, TFA has a past due balance with Taylor in the amount of Twenty Two Thousand Seven Hundred Eighty Nine Dollars and Forty One Cents ($22,789.41) (the "Past Due Balance").

G. On March 5, 1990, Exchange Bank notified TFA that Exchange Bank would no longer make loans to provide the financing to TFA to enable TFA to purchase equipment and parts from Taylor.

H. As a result, as of the date of this Agreement, TFA is having extreme difficulty purchasing any further equipment from Taylor. TFA's principal source of income is the sale of Taylor equipment. Therefore, TFA's continuing inability to perform its obligations under the Letter Agreement will adversely affect TFA's possibility of reorganizing its affairs. To

avoid that result, TFA desires to enter into this Modification Agreement and the anticipated assumption of the Letter Agreement, as modified, pursuant to Bankruptcy Code § 365.

I. Because of the various difficulties experienced by TFA, Taylor is in danger of suffering further decreases in its market share in Alabama.

J. The parties hereto desire to modify their previous arrangement as a result of the foregoing defaults and breaches.

NOW, THEREFORE, in consideration of the above Recitals and other good and valuable consideration as set forth below, the parties hereto agree as follows:

## AGREEMENT

1. The terms and conditions of this Agreement are subject to Bankruptcy Court approval in TFA's Bankruptcy case.

2. As a condition precedent to the effectiveness of this Modification Agreement, TFA will, at its sole expense, obtain a final and unappealable Order from the Bankruptcy Court having jurisdiction of its affairs (the "Court Order") authorizing and directing the debtor to assume its prepetition Letter Agreement with Taylor, as hereby modified, pursuant to 11 U.S.C. § 365. In lieu of its rights pursuant to § 365 for an immediate cure of defaults, Taylor agrees to accept the mechanisms for cure of default provided herein. As a further condition precedent to Taylor's duties pursuant to this Agreement, TFA shall obtain provisions in the Court Order stating that the Court Order shall take precedence and shall be controlling over any other prior orders and that all sums of money paid or credits applied to TFA's Past Due Balance, post-petition, are approved as part of TFA's cure of the defaults under the Letter Agreement.

3. As a condition precedent to Taylor's obligations hereunder, any and all orders of the Bankruptcy Court required hereby shall be obtained by the debtor within 45 days of the execution hereof and, unless, all such orders are timely obtained, and all orders shall have become final and nonappealable within those 45 days, this Agreement shall become null and void on the 46th day from and after its execution, upon the election of Taylor.

4. This Agreement expressly supersedes and replaces the Letter Agreement and any other agreements, arrangements, and understandings between the parties relating to TFA's activities as a distributor of Taylor equipment and parts.

5. Taylor hereby appoints TFA as a distributor for Taylor Freezer equipment and parts in the State of Alabama. Taylor reserves the right to appoint one or more additional direct dealers for the State of Alabama to sell Taylor equipment.

6. Taylor agrees to sell freezer equipment and parts to TFA on the following terms:

a. Taylor will sell to TFA freezer equipment and parts at a discount of fifty two percent (52%) off the suggested factory list price. TFA, however, will be invoiced at forty percent (40%) off the suggested factory list price. TFA shall pay cash-in-advance for the invoice price for all parts and equipment purchased from Taylor.

b. Taylor agrees that an amount equal to twelve percent (12%) of the suggested factory list price of all equipment and parts paid for in advance will be applied to TFA's Past Due Balance.

7. TFA shall continue to maintain a service facility and service personnel adequate to provide service for Taylor equipment throughout the State of Alabama.

8. TFA shall promptly provide parts, service and check-out for Taylor freezer equipment sold in Alabama as requested by Taylor.

9. TFA shall fully cooperate with any direct dealer appointed in Alabama and TFA shall provide parts, service and check-out for all equipment sold by any direct dealer upon request.

10. Taylor shall pay TFA for check-out and service work in accordance with policies applicable to its distributor/dealers from time to time in effect. Service work not payable by Taylor under such policies

shall be billed to customers in accordance with Taylor's guidelines.

11. If Taylor sells equipment to any other direct dealer appointed for the State of Alabama at a lower price than those offered to TFA, Taylor will, at the same time, offer the same prices to TFA on a cash-in-advance basis.

12. As additional consideration for TFA's obligations to provide parts, service, and check-out for Taylor equipment sold in Alabama, Taylor shall credit TFA's Past Due Balance in amounts equal to twelve percent (12%) of the suggested factory list price of all equipment purchased from Taylor by any additional direct dealer appointed by Taylor for the State of Alabama.

13. After the credits referred to in paragraphs 6(b) and 12 above have fully satisfied the Past Due Balance, equipment and parts purchased by TFA will be sold and invoiced at 52% off suggested factory list, cash-in-advance. The twelve percent (12%) credit provided for in Paragraph 12 above shall continue to be credited to TFA's current account.

14. The substantive law of the State of Illinois shall govern the interpretation, validity and enforcement of this Agreement. In the event any controversy arises regarding any matter under this Agreement, the parties agree to submit the controversy to arbitration under the Rules of the American Arbitration Association at an agreed location in Rockford, Illinois. The parties shall abide by the decision of the arbitrator or arbitrators and agree to the entry of judgment thereon. The parties agree (and the Court Order shall provide) that the automatic stay provided by § 362 of the Bankruptcy Code shall not apply to Taylor's enforcement of rights hereunder against TFA or the property of its estate. Any court of competent jurisdiction under non-bankruptcy law shall have the power to enter judgment upon an arbitration award and the parties' rights to execute on such judgment shall be governed entirely by state law as applied by the Court issuing judgment.

15. This Agreement is terminable at will by either party hereto, with or without cause, upon ninety (90) days written notice of termination by either party.

16. This Agreement is personal in nature and TFA shall have no right to assign the rights or obligations to any other person or entity, without the prior written consent of Taylor. A transfer of any ownership interest of TFA by Crumley shall be deemed to be an assignment, which shall require the prior written consent of Taylor. TFA hereby waives (and the Court Order shall so approve waiver of) any and all rights which it might have pursuant to the Bankruptcy Code to effect an assignment of any agreements between TFA and Taylor notwithstanding anti-assignment clauses.

17. This Agreement shall be binding upon, and inure to the benefit of the parties and their respective heirs, legal representatives or successors. The Court Order required hereby shall provide that this Agreement shall be binding upon TFA both as debtor and debtor-in-possession, upon the secured and unsecured creditors of TFA and upon any trustee, examiner or other fiduciary who may be appointed hereafter, whether pursuant to a conversion of the case concerning TFA to a case under Chapter 7 of the Bankruptcy Code or otherwise.

18. This Agreement constitutes the entire Agreement among the parties pertaining to the subject matter hereof and supersedes all prior agreements and understandings pertaining hereto. No covenant, representation or condition not expressed in this Agreement shall effect, or be deemed to interpret, change or restrict, the express provisions hereof.

19. If any action is required to interpret or enforce this Agreement, the prevailing party shall be entitled to recover its actual attorneys' fees and costs incurred, whether before or after suit, regardless of whether suit is commenced.

20. Each party hereby releases and forever discharges the other party from any and all claims, demands, liabilities, disputes or controversies arising from any business dealings between the parties hereto up to

**340**

the date of this Agreement excluding, however, TFA's liability to Taylor for the Past Due Balance.

IN WITNESS WHEREOF, the parties have executed this Agreement effective as of the date shown above.

TAYLOR COMPANY,

BY: [Signature]

Its: Vice President Administration

TAYLOR FREEZER OF ALABAMA, INC.,

BY: (s) Thomas M. Crumley

Its President

BY: (s) Thomas M. Crumley

THOMAS M. CRUMLEY, individually