**In re COLE BROTHERS, INC., Debtor.**

**Bankruptcy No. HT 91–84932.**

United States Bankruptcy Court,
W.D. Michigan.

Jan. 28, 1992.

**648**

Paul I. Bare, Traverse, Mich., for debtor.

Philip T. Carter, Bloomfield Hills, Mich. and James E. Lozier, Lansing, Mich., Howard & Howard Attorneys, P.C., for John Deere Indus. Equipment Co. and John Deere Co.

## OPINION ON DEBTOR'S MOTIONS TO ASSUME EXECUTORY CONTRACTS

LAURENCE E. HOWARD, Bankruptcy Judge.

At a hearing before this Court on January 9, 1992, I issued an oral bench opinion granting the two Motions to Assume Executory Contracts filed by the Debtor, Cole Brothers, Inc. (hereinafter "Cole Brothers" or "Debtor"). This Opinion embodies in written form the decision I rendered at the prior hearing, and for the reasons stated herein the Debtor's motions are granted. The Debtor is permitted under 11 U.S.C. § 365(a) to assume the executory contracts comprising its status as a dealer for John Deere Industrial Equipment Company and John Deere Company. In my Opinion I deal with the two motions filed by the Debtor as one matter since the issues raised are the same for the Motion to Assume Executory Contracts with John Deere Industrial Equipment Company as they are for the Motion to Assume with John Deere Company.

FACTS AND PROCEDURAL HISTORY

On September 13, 1991, the Debtor filed a voluntary petition seeking relief under Chapter 11 of the Bankruptcy Code. The Debtor is engaged in business as a dealer of products for both John Deere Industrial Equipment Company and John Deere Company (the companies, together, are referred to in this Opinion as "John Deere" unless differentiation is required). The Debtor sells agricultural, forestry, utility and industrial equipment to retail customers as part of its dealership arrangement with the two John Deere companies.

On November 7, 1991, the parties were before me for the final cash collateral hearing where I granted relief to the Debtor, allowing the continuation of business. At that hearing, I noted that a motion to assume the various agreements entered into as part of the Debtor's position as a dealer for the two John Deere companies was not before me and would have to be considered at a later date. Now, the Debtor has filed its motion to assume.

In its Motion to Assume Executory Contracts Between John Deere Industrial Equipment Company, the Debtor seeks to assume the following agreements:

1. John Deere Industrial Equipment Dealer Agreements
2. John Deere Industrial Dealer Terms Schedule
3. John Deere Industrial Dealer Finance Agreement
4. John Deere Industrial Dealer Conditions of Sale
5. John Deere Light Industrial Equipment Dealer Agreement
6. John Deere Light Industrial Dealer's Terms Schedule
7. John Deere Light Industrial Dealer's Finance Agreement

The Debtor lists four agreements that it desires to assume with John Deere Company, as follows:

1. John Deere Agricultural Dealer Agreement
2. John Deere Agricultural Dealer Security Agreement
3. John Deere Agricultural Dealer Terms Schedule
4. John Deere Agricultural Dealer Finance Agreement

These agreements comprise the Debtor's status as a dealer of John Deere products. Under the various Dealer Agreements, the Debtor agrees to sell the particular product line covered by the dealership agreement. In return, John Deere agrees to provide the Debtor with merchandise. As will be discussed later at more length, John Deere is obligated under the Dealer Finance Agreements and Terms Schedules to provide the Debtor with floor plan financing for new equipment and for trade-in goods from purchasers, as well as to provide retail financing to qualified customers of the Debtor.

## ISSUES

Two primary issues are posed by the Debtor's motions. First, is whether the various agreements are executory contracts as defined under § 365 of the Bankruptcy Code. Second, at issue is whether § 365 in any way limits or prevents the Debtor's ability to assume the contracts with John Deere. This latter question involves the prohibition contained in § 365(c)(2) of the Code against the assumption of executory contracts that extend debt financing or financial accommodations to or for the benefit of the Debtor.

## ARGUMENT

John Deere argues that § 365(c)(2) of the Bankruptcy Code prevents the Debtor from assuming any of the contracts comprising the dealership arrangement. John Deere concludes that the dealership contracts provide financial accommodation to the debtor and are therefore barred from assumption. The Debtor responds and argues in support of its motion that what it is seeking to assume is the overall dealership arrangement of which financial accommodation is only a limited part. The Debtor interprets § 365(c)(2) as permitting the assumption of executory contracts when only an incidental part of the contract provides the Debtor with financial benefit or accommodation.

## DISCUSSION

Section 365(a) of the Bankruptcy Code grants the trustee the power to assume or reject an executory contract. A debtor, and in this case Cole Brothers, may take action under § 365 by virtue of § 1107(a) of the Code which clothes, with some limitations insignificant to these proceedings, the debtor in possession with the right to perform all functions and duties of the trustee.

■ Determining what constitutes an executory contract is a somewhat nebulous process. Rendering a test that in some ways could encompass every contract, the Sixth Circuit attempts a definition and provides some guidance in the case, *Chattanooga Memorial Park v. Still* (*In re Jolly*), 574 F.2d 349 (6th Cir.1978), stating that executory contracts involve obligations which continue into the future. *Id.* at 351. A classic definition from Professor Vern Countryman is:

a contract under which the obligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other.

Vern Countryman, *Executory Contracts in Bankruptcy: Part I,* 57 Minn.L.Rev. 439, 460 (1973).

Taking these definitions together, I conclude that the contracts between the Debtor and John Deere are executory if performance, to some extent, still remains due on both sides. *See Terrell v. Albaugh* (*In re Terrell*), 892 F.2d 469 (6th Cir.1989).

■ All of the agreements before me for consideration involve mutual obligations that require continuing performance. Neither party disputes this conclusion. Were either party to neglect its duties under the various agreements associated with Cole

Brothers' status as a John Deere dealer, a breach of contract action would exist. For instance, the dealer agreements place upon the Deere companies the continuing obligation to accept purchase orders made by its authorized dealers. The Debtor could maintain a suit for breach of contract if either John Deere company failed to provide merchandise as called for in the agreements. Under the dealer finance agreements, John Deere agrees to provide financing, into the future, for authorized retail customers of its dealers. The John Deere Dealers Terms Schedule allows dealers to obtain floor plan financing for new machines and for trade-ins and also sets out repayment conditions.

Taken as a whole, the dealership arrangement between the Debtor and the two John Deere companies is an ongoing relationship with continuing obligations for each party. Where rights and duties are carried into the future by each party, an executory contract exists. *See Sloan v. Hicks (In re Becknell & Crace Coal Co.)*, 761 F.2d 319 (6th Cir.1985). Based on the reasoning of the Sixth Circuit and Professor Countryman, I have little trouble finding that each of the agreements before me now is an executory contract as defined in § 365 of the Bankruptcy Code.

■ The more thorny issue which I will now take up, involves whether the Debtor is permitted, under § 365, to assume the various agreements. Section 365(c)(2) of the Code forbids the assumption of any executory contract if:

> such contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor, or to issue a security of the debtor.

As a contract to extend credit is personal in nature, § 365(c)(2) prohibits a debtor from forcing a non-consenting creditor to provide financing. 2 COLLIER ON BANKRUPTCY ¶ 365.05 at 365–45 (L. King, editor, 15th ed. 1991). Long ago, the Sixth Circuit reached the conclusion, recognized by the Bankruptcy Code, that contracts involving personal trust, confidence and credit are not subject to assignment or assumption.

*Thomas–Bonner Co. v. Hooven, Ownes & Rentschler Co.*, 284 F. 386 (6th Cir.1922).

Recently, the Ninth Circuit had the opportunity to consider § 365(c)(2) as it applied to a floor plan finance agreement. In the case, *Transamerica Commercial Finance Corporation v. Citibank, N.A. (In re Sun Runner Marine, Inc.)*, 945 F.2d 1089 (9th Cir.1991), the court concluded that § 365(c)(2) prevents a debtor from assuming, even with the creditor's consent, an executory contract which calls for the lending of money to retailers for the purchase of products from the debtor. In their opinion, the Ninth Circuit joined with a number of courts in defining a contract for financial accommodation as one which provides for an extension of credit to accommodate another. *See Government National Mortgage Corp. v. Adana Mortgage Bankers, Inc. (In re Adana Mortgage Bankers, Inc.)*, 12 B.R. 977 (Bankr.N.D.Ga. 1980); and *In re Placid Oil Co.*, 72 B.R. 135 (Bankr.N.D.Tex.1987).

Looking individually at the various contracts before me under the definition provided by the Ninth Circuit, a number of them fall under § 365(c)(2)'s prohibition. The dealer finance agreements, entered into with both John Deere companies, are contracts for financial accommodation. An agreement which, standing alone, requires John Deere to provide retail financing to qualified customers of the Debtor would be barred from assumption under § 365(c)(2) of the Code. Certainly, this type of arrangement calls for the extension of credit to accommodate the Debtor. The Ninth Circuit already reached this result. Additionally, the Industrial Dealers Terms Schedule, Light Industrial Dealers Terms Schedule and Agricultural Dealers Terms Schedule, all of which provide for floor plan financing to the Debtor, would be barred from assumption under § 365(c)(2). Again, under each of these three contracts, the John Deere companies are obligated to provide financing for the benefit of the Debtor. Were I to analyze each contract separately, the prohibition of § 365(c)(2) would compel me to eviscerate the entire dealership arrangement between the Debt-

or and the John Deere companies. The Debtor might be allowed to assume the contract which establishes Cole Brothers as a dealer of John Deere products, but the Debtor would be left without the ability to assume any of the financing contracts.

But, I do not think the Debtor's Motion to Assume should be decided by piecemeal analysis of each of the agreements comprising the Debtor's status as a John Deere authorized dealer. Cole Brothers is asking me to approve their decision to continue operating as a dealer of both John Deere entities. All the agreements before me are essential and non-severable parts of Cole Brothers' ability to operate as a dealer of John Deere products. Together, the agreements constitute the Debtor's status as a John Deere dealer and they should be treated as a whole when deciding the motions to assume.

The agreements themselves support this conclusion. Paragraph 1(b) of the John Deere dealer agreements under the heading "Obligation of the Parties" states, in part:

> The Company agrees that the Dealer will have the benefit of any Finance Plans, Lease Plans, Floor Plans, Parts Return Programs, Sales or Incentive Programs or similar plans or programs which it, from time to time, makes available....

The parties, in entering into the agreement making Cole Brothers a dealer of John Deere products, anticipated and provided that financing contracts would accompany the privilege of being a John Deere Industrial and John Deere Company Dealer. The contracts which individually would be considered financial accommodations, cannot be so severed in my consideration of the effect of § 365(c)(2) of the Code. Instead, it must be determined whether the entire dealer arrangement is an agreement for financial accommodation or for debt financing barred from assumption by § 365(c)(2) of the Code.

The prohibition of § 365(c)(2) is designed to prevent the trustee, or in this case, the Debtor, from assuming a contract to extend debt financing or financial accommodations. The Bankruptcy Code supplies no further guidance as to what constitutes a contract for financial accommodation and no express answer is given as to what a court should do when only part of the agreement provides for financial accommodation.

Various bankruptcy courts have considered the application of § 365(c)(2). In the case, *Whinnery v. Bank of Onalaska (In Re Taggatz)*, 106 B.R. 983 (Bankr. W.D.Wisc.1989), the court held that an agreement, between the debtor and the bank, to fund the unfunded portion of a promissory note upon the fulfillment of certain conditions was an executory contract barred from assumption under § 365(c)(2). The Wisconsin Bankruptcy Court found the contract to be one providing financial accommodation to the debtor. The continuing duty to make good on certain financial obligations of the debtor, posed by the issuance of a surety bond, was found to constitute an executory contract for financial accommodation in the case, *Wegner Farms Company v. Merchants Bonding Company (In Re Wegner Farms)*, 49 B.R. 440, 444 (Bankr.N.D.Iowa 1985). And, as already noted, the Ninth Circuit, in *Sun Runner Marine*, found that a contract to provide retail financing was barred from assumption.

What distinguishes this case from *Sun Runner Marine*, and the other cases mentioned, is that the financing agreements between Cole Brothers and John Deere Industrial and John Deere Company are part of a broader relationship. In *Sun Runner Marine*, and in the other cases cited, the debtor sought to continue in force a contract that was designed solely for the purpose of providing some form of financial accommodation.

Here, the thrust of all the agreements before me is to establish the Debtor as a dealer of John Deere products. It is the ability to operate as a John Deere dealer that the Debtor seeks to assume. The financing agreements are necessary to the dealership, but do not overshadow the other provisions of the various agreements so that I would consider the relationship, as a whole, to be one of financial accommoda-

tion. When I consider all the agreements placed before me, I find that they create a dealership, a business relationship, and not one where the overriding intent is to provide financial accommodation. The financing agreements follow what is already in place, namely the Debtor's status as a John Deere dealer. Financing is only a part of the Debtor's status as a dealer of John Deere products.

■ When contracts providing for the extension of credit or for financial accommodation are only incidental to or a part of a larger arrangement involving the debtor, the Court is not called upon under § 365(c)(2) to deny the debtor the right to assume or to reject. *See* 2 COLLIER ON BANKRUPTCY ¶ 365.05 at 365–45 (L. King, editor, 15th ed. 1991). In the case before me, the Debtor desires to assume the various agreements so that it can continue operating as a dealer of John Deere products. The financing agreements are necessary but still incidental to this overall arrangement.

Section 365(c)(2) expressly states that a debtor is prevented from assuming a, that is a singular, contract for financial accommodation. The statute does not state whether the debtor is barred from assuming a contract where only a part of the agreement is for financial accommodation. In this silence, I must look at what is the overall intent of the agreement. If the purpose of the executory contract is to provide financing, then the debtor should not be allowed to assume it and force the creditor to continue its obligation to provide financial benefit at its own risk. But, in a situation like what is before me, when the overall agreement establishes a contractual business relationship, of which financing is only a part, the debtor should be, and is allowed to exercise its right of assumption.

The John Deere companies attempt to refute this conclusion, citing the case, *In re Taylor Freezers of Alabama, Inc.,* 115 B.R. 333 (Bankr.N.D.Ala.1990). In *Taylor Freezers,* the court prevented the debtor from entering into a proposed modification of a distributorship agreement that provid-

ed for merchandise to be supplied to the debtor on credit. The court found that credit-sales agreements fall under § 365(c)(2)'s prohibition.

There are a number of reasons, in addition to the fact that the other court's decision is not binding, why I now choose not to follow the Alabama Bankruptcy Court. To begin with, the court gives only minimal attention to the entire issue. Three paragraphs of the opinion are devoted to its conclusion and the case does not discuss the issue of whether the entire contract must be for financial accommodation, or only a part. Further, the Alabama court finds other faults with the debtor's request and with the proposed agreement that justify its denial of the debtor's motion and makes the discussion of § 365(c)(2) dicta. The court finds that the debtor is proposing an entirely new executory contract rather than the assumption of one previously in force. This determination renders the discussion of § 365(c)(2) moot. Overall, the decision places very little importance on its determination of the effect of § 365(c)(2). With the entire business future of Cole Brothers riding on my interpretation, I am very reticent about following and choose not to adopt the conclusion of the Alabama court.

Neither § 365(c)(2) of the Code, nor the policy behind it, preclude the Debtor from opting to continue this contractual relationship. Being involved in a dealership is wholly different than being a lender or financier of the Debtor. Section 365(c)(2) precludes the Debtor from forcing a lender to provide financing. But, the Debtor may assume an executory contract establishing an ongoing dealership agreement where financing clearly accompanies the relationship, but is incidental to it.

## CONCLUSION

The Debtor is permitted under § 365 to assume the executory contracts with both John Deere Company and with John Deere Industrial Equipment Company. For these

reasons the motions of the Debtor are granted.