In re **COLE BROTHERS, INC.,** Debtor.

**JOHN DEERE COMPANY and John Deere Industrial Equipment Company, Appellants,**

v.

**COLE BROTHERS, INC.,** Appellee.

No. 1:92–CV–219.
Bankruptcy No. HT91–84932.

United States District Court,
W.D. Michigan, S.D.

Sept. 2, 1992.

---

Philip T. Carter, Howard & Howard, PC, Bloomfield Hills, MI, James E. Lozier, Howard & Howard, Lansing, MI, for appellants.

Paul I. Bare, Traverse City, MI, for appellee.

Cole Bros., Inc., pro se.

## OPINION

BENJAMIN F. GIBSON, Chief Judge.

This is an appeal from a bankruptcy court order allowing debtor Cole Brothers to assume certain executory contracts it has with appellants John Deere Co. ("JDC") and Deere Industrial Equipment Co. ("Deere Industrial").[1] A hearing on this matter was held on August 12, 1992. Upon review of the record on appeal and the arguments presented, for the following reasons the appeal is granted and the bankruptcy court order is reversed.

### I.

The facts are not in dispute. Debtor is a John Deere dealer in the business of selling agricultural, industrial, utility, and forestry machinery. Appellants are the debtor's major secured creditors. By its order, the bankruptcy court permitted the debtor to assume a number of contracts with appellants which, taken together, are referred to as the "dealership arrangement." *In re Cole Brothers*, 137 B.R. at 650. The contracts at issue are the Deere dealership agreements, the conditions of sales, the dealer terms schedules, the dealer finance agreements, and the security agreements entered into between appellants and the debtor.

The dealership agreements are the basic agreements between JDC and Deere Industrial and its dealers. They govern such fundamental matters as the dealership location, acceptance and shipment of orders, terms and conditions of sale, required facilities, security for debtor's indebtedness, and termination of the dealership arrangement. The conditions of sales deal with matters such as title to goods sold to the dealer, conditions affecting deliver, damage to goods in transit, warranty obligations, and other miscellaneous matters. The dealer terms schedules enable the dealer to

---

1. The bankruptcy court decision is found at *In re Cole Brothers, Inc.,* 137 B.R. 647 (Bkrtcy. W.D.Mich.1990).

obtain floor plan financing for new machines by paying 90% of the balance owing for the machine when it is sold at retail and the remaining 10% on the first day of the second month after the 90% payment is made. The terms schedules also enables the dealer to obtain floor plan financing for trade-ins. The dealer finance agreements require financing for sales to retail customers. The security agreements secure the dealer's indebtedness to appellants.

Through the financing commitments contained in the conditions of sales and the finance agreements, dealers ordinarily buy new machines, attachments, and parts from JDC and Deere Industrial on secured credit terms and pay for them when they are sold through the floor planning arrangement. Floor planning is essential to the dealer because it gives the dealer automatic financing of any new machinery. Floor planning permits the dealer to take delivery of stock and not pay appellants the bulk of the purchase price until that stock is sold. When a customer trades in a used piece of machinery, the floor planning arrangement requires the appellants to take a floor plan note from the dealer for the wholesale value of the trade-in. The note is credited against the dealer's floor plan debt for the new machine that is sold on trade-in. In addition, appellants often finance retail customers on a secured installment loan contract.

The bankruptcy court permitted the debtor to assume the entire dealership arrangement, including the terms schedules and the finance agreements. Appellants contend that the contracts are for "financial accommodations" and, therefore, are not assumable under Section 365(c)(2) of the bankruptcy code.

## II.

A bankruptcy court's factual findings shall not be set aside unless clearly erroneous. Bankruptcy Rule 8013. The bankruptcy court's legal conclusions are reviewed *de novo. In re Caldwell,* 851 F.2d 852 (6th Cir.1988).

## III.

There is no dispute that the dealership and supplemental agreements are executory contracts. Section 365 of the Bankruptcy Code authorizes a trustee or debtor-in-possession in a Chapter 11 case to either reject or assume executory contracts, subject to court approval. 11 U.S.C. § 365. Subsection 365(c)(2) provides in relevant part that a trustee may not assume "a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor." 11 U.S.C. § 365(c)(2). The rationale of this subsection is that when "the debtor files a bankruptcy petition, another party's contractual commitment to extend new credit to the debtor in the future may be unfairly onerous to that party." Weintraub & Resnick ¶ 7.10[3] at 7–101.

The bankruptcy court found that all of the agreements at issue were "essential and non-severable parts of Cole's Brothers' ability to operate as a dealer of John Deere products." *In re Cole Brothers,* 137 B.R. at 651. The court held that the dealer terms schedules and the finance agreements, standing alone, were "financial accommodations" which may not be assumed under the bankruptcy code. *Id.* The court found, however, that the terms schedules and the finance agreements were merely incidental to the entire dealer arrangement. Accordingly, the entire dealership arrangement was not an agreement for "financial accommodation." The court stated:

Here, the thrust of all the agreements before me is to establish the Debtor as a dealer of John Deere products. It is the ability to operate as a John Deere dealer that the Debtor seeks to assume. The financing agreements are necessary to the dealership, but do not overshadow the other provisions of the various agreements so that I would consider the relationship, as a whole, to be one of financial accommodation. When I consider all the agreements placed before me, I find that they create a dealership, a business relationship, and not one where the overriding intent is to provide financial accommodation. The financing agreements follow what is already in place,

namely the Debtor's status as a John Deere dealer. Financing is only a part of the Debtor's status as a dealer of John Deere products.

When contracts providing for the extension of credit or for financial accommodation are only incidental to or a part of a larger arrangement involving the debtor, the Court is not called upon under § 365(c)(2) to deny the debtor the right to assume or to reject. In the case before me, the Debtor desires to assume the various agreements so that it can continue operating as a dealer of John Deere products. The financing agreements are necessary but still incidental to this overall arrangement.

*Id.* at 651–52 (citation omitted).

This case appears to be one of first impression in this Circuit. The bankruptcy court found support for its position in the following excerpt from *Collier on Bankruptcy:*

The drafting of paragraph (2) is limited, however, and applies only to extensions of credit which are "loans", "debt financing", or "financial accommodations" and not to all contracts to extend credit. These terms are to be strictly construed and do not extend to an ordinary contract to provide goods or services *that has incidental financial accommodations or extensions of credit* . . . .

2 *Collier on Bankruptcy* ¶ 365.05[1], at 365–45 (emphasis added).

Appellants direct the Court's attention to *In re Sun Runner Marine, Inc.,* 945 F.2d 1089 (9th Cir.1991). In that case, the debtor manufactured and sold boats to retail dealers. Transamerica Commercial Finance was contractually committed to the debtor to finance the sales to dealers by loaning dealers the purchase price of any new boats. The Ninth Circuit determined that the contract requiring Transamerica to finance the sales was a financial accommodation within the purview of Section

365(c)(2). *Sun Runner,* 945 F.2d at 1091–92. Likewise, appellants refer the Court to *In re Taylor Freezers of Alabama, Inc.,* 115 B.R. 333 (Bankr.N.D.Ala.1990). In that case, the bankruptcy court barred the assumption of a dealership contract which required a manufacturer to make credit sales to a dealership.[2]

The initial question presented in this appeal is whether the requirement that appellants extend floor plan financing to the debtor is a contract for "financial accommodations." If it is, the Court must then determine whether the financing requirements of the dealership arrangements are merely incidental to the overall contract, leaving the contracts otherwise assumable.

■ "The term 'financial accommodation' has been defined as the extension of money or credit to accommodate another." *Sun Runner,* 945 F.2d at 1092, *quoting In re Adams Mortgage Bankers, Inc.,* 12 B.R. 977, 986 (Bankr.N.D.Ga.1980). There appears to be no question that the financing commitments standing alone are "financial accommodations" which are not assumable in bankruptcy. The bankruptcy court found this to be the case and this Court agrees.

The Court believes that the bankruptcy court erred in determining that the financing commitments were nevertheless merely incidental to the dealership arrangement. After careful review of the contracts at issue in this action, it is apparent that the extension of credit by the appellants is an integral component of the dealership arrangement. Credit is vital to the debtor's continued operation as a seller of farming and industrial equipment. Here, as in *Sun Runner,* the requirement that the appellants extend credit is a central purpose of the group of contracts. The fact that in *Sun Runner* an entity separate from the manufacturer provided the credit under a separate contract does not distinguish that

---

**2.** The court in *Taylor Freezers* determined that the plain language of Section 365(c)(2) establishes that the "incidental" financial accommodations exception approved by *Collier's* is not valid. This Court need not determine whether the exception is valid. Assuming for the sake of

argument that executory contracts which contain incidental financial accommodations may be assumed, the financial accommodations of the Deere dealership arrangement are not merely incidental. As discussed below, they are central to the parties' agreement.

case from the facts presented here. That the appellants are both the manufacturers and the creditors for this debtor should not put them in a less desirable position under Section 365(c)(2) than if the appellants were merely creditors, not in a dealership relationship with the debtor.[3] Accordingly, the dealers terms schedules and finance agreements make the dealership arrangement a contract for "financial accommodations" which is not assumable by the debtor.[4]

## IV.

For the reasons stated above, the decision of the bankruptcy court permitting the debtor to assume the dealership arrangement is reversed. The case is remanded to the bankruptcy court for further proceedings.

**3.** In this vein the Court notes that permitting the debtor to assume the dealership arrangement has the odd result of requiring appellants to extend credit to a debtor in bankruptcy where the terms of the security agreements permit the appellants to cancel the credit of a dealer in default. Given Section 365's concern with protecting creditors, it does not countenance putting creditors in a worse position as to the future extension of credit than they would be in if the debtor was not in bankruptcy. *See generally Whinnery v. Bank of Onalaska (In re Taggatz)*, 106 B.R. 983, 992 n. 11 (Bkrtcy.W.D.Wis. 1989) (surveying decisions in which meaning of "financial accommodations" is analyzed in light of possible financial risk to creditors).

**4.** The Court gives no opinion as to the bankruptcy court's determination that the terms schedules and finance arrangements are not severable from the other contracts.