**In re TWIN CITY POWER EQUIPMENT, INC.
Debtor.**

No. 03–75909.

United States Bankruptcy Court,
C.D. Illinois.

April 7, 2004.

William T. Hundman, Law Offices of William T. Hundman, Bloomington, IL, James R. Jorgensen, S. Linn Perkins, Peoria, IL, David E. Runck, Minneapolis, MN, Mindy D. Smith, St. Louis, MO, for creditors.

James L. Magill, Peoria, IL, for U.S. Trustee.

John H. Stockman, Bloomington, IL, for debtor.

## OPINION

LARRY L. LESSEN, Bankruptcy Judge.

The issue before the Court is whether a John Deere Dealer Agreement is a non-assumable financial accommodation pursuant to 11 U.S.C. § 365(c)(2).

The material facts are not in dispute. The Debtor, Twin City Power Equipment, Inc., is a retail dealer of lawn and garden equipment. The Debtor carries brands such as Kubota, Toro, Lawn Boy, and Polaris. In addition, the Debtor is a John Deere lawn and garden dealer. The Deere brand constitutes about 15% of the Debtor's inventory.

The focus of this proceeding is on the John Deere Company Authorized Lawn and Garden Dealer Agreement executed by the Debtor and John Deere on May 21, 1997. The Agreement appoints the Debtor as an authorized John Deere Lawn and Garden Dealer for the purposes of merchandising products sold by Deere as part of its Lawn and Garden Products line. Pursuant to the Agreement, Deere agrees to accept orders from the Debtor and the Debtor will have the benefit of any of Deere's financing programs. The Debtor agrees to maintain adequate facilities and working capital, to provide competent management and trained personnel, to actively promote the sale of Deere products, to maintain inventory levels in proportion to the sales potential of the area, and to service the Deere products.

The Dealer Agreement requires Deere to ship goods to the Debtor unless the Debtor's financial condition does not justify the extension of additional credit, the Debtor has consistently failed to perform its obligations under the Agreement, or the shipment would result in a larger inventory than Deere is willing to finance. The Debtor is obligated to pay Deere in cash unless arrangements have been made for financing.

The Dealer Agreement may be canceled by Deere for a number of reasons, including the death or withdrawal from the company of a principal, default, unauthorized change in location, or revocation of a guaranty. In addition, Deere may terminate a dealer's appointment if the "Dealer's trade area does not afford sufficient sales potential to continue to reasonably support an authorized dealer or if the Company believes the Dealer is not fulfilling the requirements of his appointment..." A Dealer who ceases to be an authorized John Deere dealer must remove all signs bearing the Deere name or trademark.

Prior to the Debtor becoming an authorized dealer on May 21, 1997, Deere conducted a credit investigation of the Debtor and its principals in order to determine the creditworthiness of the dealership. Once the satisfactory information was obtained and reviewed, Deere's credit manager approved the Dealer Agreement. As part of the process, the Debtor's principals, David and Tom Beussink, were required to provide Deere with a personal guaranty for the contemplated extension of credit to the Debtor. The Debtor gave Deere a security interest in all Deere goods and Deere perfected its security interest by filing financing statements.

The Dealer Agreement is the main agreement under which the Debtor and Deere operate. Pursuant to this Agreement, Deere accepted orders from the Debtor on credit. This is typical of Deere's arrangements with other dealers. In order to conduct business, a dealer must have inventory on the floor, and in order to get the inventory, the dealer must pay cash or borrow the money. In order to put inventory on the floor, the Debtor borrowed from John Deere pursuant to the Dealer Agreement. A Deere division manager testified that he was unaware of a dealer who purchased inventory outright or otherwise arranged for the purchase through an escrow agreement in order to satisfy the dealer's obligations under a dealer agreement.

The Debtor's agreements with Deere require the Debtor to pay Deere immediately upon the sale of goods to a consumer. Dealers get monthly statements from Deere. On a periodic basis, Deere sends an auditor to review the Debtor's books and records and to take a physical inventory. As of the hearing date of March 5, 2004, the Debtor owes Deere $7,023.57.

The Debtor filed a petition pursuant to Chapter 11 of the Bankruptcy Code on December 29, 2003. (The Debtor's principals filed individual petitions pursuant to Chapter 13 of the Bankruptcy Code.)

On February 27, 2004, Deere filed a Motion to Lift the Automatic Stay and a Motion for Determination that Various Agreements are Non-Assumable. The Debtor responded to the lift stay motion by asserting that it was current in its obligations to Deere and that the Deere collateral was necessary for the continued operations and effective reorganization of the Debtor. The Debtor responded to the motion for determination that various agreements are non-assumable by admitting that the Revolving Plan Dealer Agreement, the Dealer Finance Agreement, and Debtor Leasing Agreement constitute financial accommodations that may not be assumed pursuant to 11 U.S.C. § 365(c)(2). However, the Debtor denied that the Dealer Agreement and Sign Identification Agreement are non-assumable obligations.

Section 365(c)(2) of the Bankruptcy Code provides as follows:

(c) The trustee may not assume or assign an executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if–

(2) such contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor, or to issue a security of the debtor.

The purpose of this subsection is to prevent the trustee from requiring new advances of money or other property. *In re Whiteprize, LLC*, 275 B.R. 868, 873 (Bankr.D.Ariz.2002); *In re Neuhoff Farms, Inc.*, 258 B.R. 343 (Bankr. E.D.N.C.2000). The Code does not define the terms "loan", "debt financing", or "financial accommodations". Case law sug-

gests that these terms be strictly construed. *In re Thomas B. Hamilton Co.,* 969 F.2d 1013, 1018 (11th Cir.1992), and the legislative history supports this approach: "Characterization of contracts to make a loan, or extend other debt financing or financial accommodations, is limited to the extension of cash or a line of credit and is not intended to embrace ordinary leases or contracts to provide goods or services with payments to be made over time." 124 Cong. Rec. H11089 (daily ed. Sep. 28, 1978) (statement of Rep. Edwards), *reprinted in* 1978 U.S.C.C.A.N. 6436, 6447 (1978); 124 Cong. Rec. 517406 (daily ed. Oct. 6, 1978) (statement of Sen. DeConcini), *reprinted in* 1978 U.S.C.C.A.N. 6505, 6515 (1978). Therefore, a contract "for which the extension of credit is the primary purpose 'may be deemed a financial accommodation,'" but one "in which the extension of credit is only incidental to or a part of a larger arrangement involving the debtor" cannot be so classified. *In re Thomas B. Hamilton Co., supra,* 969 F.2d at 1019; *In re Best Products Co., Inc.,* 210 B.R. 714, 717 (Bankr.E.D.Va.1997).

■ The Debtor argues that the Dealership Agreement is not primarily a financing arrangement. The Debtor notes that the opening paragraph of the Agreement summarizes the purpose of the Agreement, which is to name the Debtor as an authorized Deere dealer of lawn and garden merchandise. The Agreement does not require Deere to extend financing to the Debtor; the Agreement states only that Deere "may" extend financing to the Debtor if the Debtor meets certain conditions.

Deere argues that the extension of credit from Deere to the Debtor was at the heart of the Dealer Agreement. Deere notes that the Agreement requires the Debtor to maintain enough inventory to perform at market potential. Deere as-

serts that the Debtor needed the Deere financing referenced in the Agreement in order to maintain the required inventory level. According to Deere, the Debtor could not perform at market potential without the advance purchase of inventory and parts through Deere financing.

Deere's position is supported by *In re Cole Bros., Inc.,* 154 B.R. 689 (W.D.Mich. 1992). That case, like this case, dealt with a Deere dealer, albeit one of agricultural rather than lawn equipment. The contracts at issue included a dealership agreement, a conditions of sales agreement, a terms schedule, a Deere finance agreement, and security agreements. Pursuant to these agreements, the debtor ordered equipment from Deere on credit and sold the equipment at retail to third parties. Following the sale of any equipment, the debtor was required to pay Deere 90% of the cost of the equipment at the time of sale and the remaining 10% at a subsequent date. The District Court found the various contracts to be non-assumable by the debtor:

> [I]t is apparent that the extension of credit by ... [Deere] is an integral component of the dealership arrangement. Credit is vital to the debtor's continued operation as a seller of farming and industrial equipment...[T]he requirement that... [Deere] extend credit is a central purpose of the group of contracts.... [T]he dealers terms schedules and finance agreements make the dealership arrangement a contract for "financial accommodations" which is not assumable by the debtor.

154 B.R. at 692–93.

The Debtor distinguishes *Cole Bros.* from this case because *Cole Bros.* involved several contracts, and the Debtor in this case waived any interest in all the agreements except for the Dealer Agreement and Sign Identification Agreement. Be-

cause these two agreements do not require Deere to finance the Debtor's purchases from Deere, the Debtor argues that *Cole Bros.* is not controlling.

The Court believes that Deere's position that financing was integral rather than incidental to the Dealer Agreement is supported by the case law and the facts in this case. The Court notes that all of the contracts which are the subject of Deere's motion were executed at the same time. The Debtor's attempt to cherry pick one or two of the contracts does not obviate the fact that an agreement to extend financing for the purchase of inventory was at the heart of all of the agreements. Without financing from Deere, the Debtor would be unable to finance the amount of inventory required to perform under the Dealership Agreement. *See In re Cole Bros., supra,* 154 B.R. at 692; *In re Sun Runner Marine, Inc.,* 945 F.2d 1089 (9th Cir.1991). The Deere division manager testified that he was not aware of a Deere dealership that purchased its inventory on a cash basis. He further testified that a dealer who paid cash for his inventory would be unlikely to maintain the inventory level needed to perform at market potential. Based on the foregoing, the Court finds that the Dealership Agreement is a financial accommodation that cannot be assumed.

■ According to its own terms, the Sign Agreement automatically terminates without notice when the Dealer Agreement is terminated. The Dealer Agreement also provides that a dealer who ceases to be an authorized dealer must remove all Deere signage and stop using Deere trade names or trademarks. Under these circumstances, the Debtor cannot assume the Sign Identification Agreement.

■ Deere has also demonstrated cause to lift the automatic stay. The evidence showed that there was an arrearage to Deere of over $7,000. The evidence also showed that Deere products constituted only about 15% of the Debtor's sales. Thus, Deere products are not essential to the Debtor's reorganization. Moreover, the Dealer Agreement provides that the Debtor is not authorized to sell Deere products following the termination of the Dealer Agreement. For these reasons, the automatic stay is modified to allow Deere to exercise its rights and remedies under the Deere Agreement and applicable non-bankruptcy law.

For the foregoing reasons, the Court finds that the Debtor may not assume its various agreements with John Deere and the automatic stay should be lifted.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

## ORDER

For the reasons set forth in an Opinion entered this day,

IT IS HEREBY ORDERED that the John Deere Lawn and Garden Dealer Agreement, John Deere Credit Lawn and Grounds Care Revolving Plan Dealer Agreement, John Deere Credit Lawn and Grounds Care Dealer Leasing Agreement, and John Deere Lawn and Grounds Care Dealer Finance Agreement be and are hereby determined to be non-assumable executory contracts under 11 U.S.C. § 365(c)(2).

IT IS FURTHER ORDERED that the John Deere Dealer Sign Identification Agreement be and is hereby declared non-assumable because it terminated upon the termination of the Dealer Agreement.

IT IS FURTHER ORDERED that John Deere's Emergency Motion for Relief

from Automatic Stay be and is hereby allowed.