In re SUN RUNNER MARINE,
INC., d/b/a Sun Runner
Yachts, Debtor.

TRANSAMERICA COMMERCIAL
FINANCE CORPORATION,
Appellant,

v.

CITIBANK, N.A., Appellee.

No. 90–35640.

United States Court of Appeals,
Ninth Circuit.

Submitted June 5, 1991 *.

Decided Sept. 23, 1991.

---

\* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Scott R. Smith, Stamper & Taylor, P.S., Spokane, Wash., for appellant.

Frank T. Pepler, Steefel, Levitt & Weiss, San Francisco, Cal., for appellee.

Before WRIGHT, FARRIS and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

Transamerica Commercial Finance Corporation ("Transamerica") appeals a decision by the Ninth Circuit Bankruptcy Appellate Panel ("BAP") holding that a flooring agreement between Transamerica and Chapter 11 bankruptcy debtor Sun Runner Marine, Inc. ("Sun Runner") is nonassumable under section 365 of the Bankruptcy Code, 11 U.S.C. § 365 (1988). This decision reversed a ruling by the bankruptcy court that the flooring agreement was assumable.

We have jurisdiction under 28 U.S.C. § 158(d). We vacate that portion of the BAP opinion which determined the agreement was not an executory contract, and hence nonassumable under section 365, but affirm the BAP on its alternate ground of decision that the agreement is a financial accommodation contract and as such is nonassumable under Bankruptcy Code § 365(c)(2).[1]

## FACTS AND PROCEEDINGS

Sun Runner manufactured boats. It had a flooring agreement with Transamerica by which Transamerica would lend money to retail boat dealers so they could buy boats from Sun Runner and resell them to customers. Once Transamerica agreed to finance a particular dealer, Sun Runner would deliver a boat to the dealer and Transamerica would pay Sun Runner the dealer's cost for the boat, charging the

---

1. Bankruptcy Code § 365 provides in pertinent part:

§ 365. **Executory contracts and unexpired leases**

(a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

. . . . .

(c) The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—

. . . . .

(2) such contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor, or to issue a security of the debtor. . . .

11 U.S.C. § 365 (1988).

payment as a loan to the dealer. The loan would be secured by a lien on the boat. When the dealer sold the boat, part of the purchase price received by the dealer would be paid to Transamerica to repay the loan. If a dealer defaulted, Sun Runner was obligated to repurchase the boat by paying Transamerica the unpaid balance of the loan to the dealer. Thus, Sun Runner effectively was a guarantor or surety for Transamerica's loans to the dealers.

Citibank, N.A. ("Citibank") was Sun Runner's principal banker and primary pre-petition lender. Citibank held a blanket lien on all of Sun Runner's assets. When Sun Runner filed its Chapter 11 bankruptcy petition, it owed Citibank $7 million. Citibank contends it is undersecured. Assuming this is the case, Citibank is a partially secured creditor and also holds what may be the largest unsecured claim against the debtor Sun Runner.

After Sun Runner filed its Chapter 11 petition, Transamerica moved to compel it to assume or reject the flooring agreement as an executory contract under Bankruptcy Code § 365. Sun Runner and Transamerica stipulated to the assumption of the flooring agreement. Over Citibank's objection, the bankruptcy court approved the stipulated assumption as the assumption of an executory contract under section 365. The bankruptcy court commented that the motion might have been brought as a motion to obtain post-petition financing under Bankruptcy Code § 364, 11 U.S.C. § 364 (1988).

As a condition of the assumption of the flooring agreement, and pursuant to the stipulation and section 365(b)(1)(A), the bankruptcy court ordered Sun Runner to cure all defaults to Transamerica. This order required Sun Runner to pay Transamerica: (1) $66,826.45 in pre-petition interest charges; (2) $58,270.77 plus interest for the repurchase of a boat; (3) $6,369.00 for a discount granted to a dealer; and (4) $43,021.84 in post-petition interest charges. Citibank timely appealed and sought a stay of the bankruptcy court's assumption order. The stay was denied.

On appeal to the BAP, the BAP reversed the bankruptcy court in a published opinion. *In re Sun Runner Marine, Inc.*, 116 B.R. 712 (Bankr. 9th Cir.1990). The BAP held that: (a) the flooring agreement was not an executory contract and thus was not assumable under section 365; (b) even if the flooring agreement was an executory contract, it was a financial accommodation and its assumption was barred by section 365(c)(2); (c) Transamerica's consent did not abrogate the bar to assumption under section 365(c)(2); (d) the flooring agreement could not be authorized as post-petition financing under section 364; (e) the flooring agreement could not be authorized as a cross-collateralization under section 364; and (f) the appeal was not moot under section 364(e). This appeal followed.

## DISCUSSION

It is not necessary to decide whether the flooring agreement is an executory contract. The agreement is one of "financial accommodation," and as such is not assumable under section 365 of the Bankruptcy Code whether or not the flooring agreement can be considered an executory contract. Accordingly, we vacate that portion of the BAP's opinion holding that the flooring agreement is not an executory contract. As for the other issues, we agree with the reasoning and conclusions of the BAP opinion as authored by Judge Volinn, and we adopt the following portions of the BAP opinion as the opinion of this court:

"Whether the Agreement is a Financial Accommodation Contract

"As [it] must, [Transamerica] argue[s] not only that the [a]greement is executory, but further that it is not disqualified from assumption under § 365 as a financial accommodation contract. Assuming arguendo that the [a]greement or the parties' course of conduct gave rise to mutually enforceable expectations sufficient to render the [a]greement an executory contract, we conclude that the [a]greement still would not be assumable because it is a financial accommodation contract. Section 365(c) provides:

The trustee *may not* assume or assign any executory contract ... if—

> (2) such contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor....

(emphasis added). [Transamerica] assert[s] that the [a]greement is not a financial accommodation contract within the meaning of § 365(c)(2) because the [a]greement is neither a contract to make a loan nor debt financing, and no loans are actually made directly from Transamerica to the debtor [Sun Runner] under the terms of the [a]greement.

> These arguments are not convincing. The term 'financial accommodation' has been defined as the extension of money or credit to accommodate another. *In re Adana Mortgage Bankers, Inc.*, 12 B.R. 977, 986 (Bankr.N.D.Ga.1980); *accord, In re Wegner Farms Co.*, 49 B.R. 440 (Bankr.N.D.Iowa 1985).

*In re Placid Oil Co.*, 72 B.R. 135, 139 (Bankr.N.D.Tex.1987). The [a]greement clearly contemplates Transamerica's extension of money or credit in the form of loans to the dealers. The proceeds, however, are disbursed directly to the debtor, the debtor incurring secondary liability for the repayment of the dealer loans through the [a]greement. These loans are admittedly made to accommodate the debtor; in fact [Transamerica has] argued throughout these proceedings that these loans are an indispensable means of financing the debtor's business. Thus the [a]greement is a contract for financial accommodations for the benefit of the debtor, and is within the purview of § 365(c)(2).

Whether the Lender's Consent Renders a Financial Accommodation Contract Assumable

■ "[Transamerica] next argue[s] that even if the [a]greement is a financial accommodation contract, § 365(c)(2) should not prohibit its assumption when both the debtor and the other contracting party (Transamerica) consent to its assumption. [Transamerica] urge[s] that § 365(c)(2) protects unwilling lenders from the debtor's assumption of a financial accommodation contract, but should not thwart the assumption of such a contract if the lender and the debtor (or trustee) both wish the contract to be enforced. There is a surface appeal to this argument; while it seems clear that a financially troubled debtor should not be allowed to impose itself on an unwilling lender by virtue of § 365, it is not as readily discernible why that statutory prohibition should apply where the lender is willing.

"At the outset, we note that in general, § 364 governs post-petition credit, while § 365 governs the continuation, post-petition, of pre-petition contractual relations. There is clearly room for overlap where the debtor's pre-petition financing is governed by a contract which, by its terms, would have continued after the petition date absent bankruptcy. But with the advent of the bankruptcy, the Code detached the function of prospective financing from existing credit arrangements through § 365(c)(2), which prohibits the assumption of financial accommodation contracts without regard to the lender's consent. Post-petition financing arrangements are thus governed solely by § 364.

"It is unlikely that the absence of an exception for consenting lenders is a mere oversight of the drafters. By way of comparison, § 365(c)(1) prohibits the assumption of certain contracts if state law excuses the non-debtor party from accepting performance by an entity other than the debtor. That subsection, however, explicitly prohibits assumption *only* when the non-debtor party to the contract does not consent to assumption. Section 365(c)(2) is the very next subsection, and it prohibits the assumption of all financial accommodation contracts with no reference to the consent of the non-debtor party to the contract.

"Such an interpretation is also consistent with the Code's overall approach to post-petition financing. Section 364 provides certain incentives that a debtor may offer, with court approval, to induce a potential lender to extend credit post-petition. These incentives include granting the lender an administrative expense priority claim under § 364(b), a "super-priority" claim under

§ 364(c)(1), or a lien on unencumbered estate assets under § 364(c)(2) or (3), on account of the *post-petition* credit extended. Section 364 does not, however, authorize the debtor to pay the lender's *pre-petition* unsecured claim as a condition precedent to the post-petition financing.[2] Permitting the assumption of a financial accommodation contract would allow a post-petition lender, such as Transamerica in this case, to receive full payment on its pre-petition unsecured claim under § 365(b)(1).[3] This benefit to the lender would be at the expense of the other unsecured creditors, such as Citibank in this case, because it would diminish the estate assets available to satisfy their claims. Thus the § 365(c)(2) prohibition against the assumption of financial accommodation contracts protects all unsecured creditors, not just the lender, and the lender's consent alone is not sufficient to abrogate it.

"This point was recognized by the court in *In re Placid Oil Co.,* 72 B.R. 135 (Bankr. N.D.Tex.1987). In that case, the financing creditor urged that a contract be assumed, but the court held that it was a financial accommodation contract and therefore § 365(c)(2) prohibited its assumption despite that consent. [*Id.* at 139.] In reaching that conclusion, the court noted that

> The prohibition against assumption of contracts for 'financial accommodation' exists for the protection of a party who has made a yet unperformed lending commitment, but the prohibition is for the benefit of all claimants against the estate as well.

*Id.* (citations omitted).

"[Transamerica] cite[s] *In re Prime, Inc.,* 15 B.R. 216 (Bankr.W.D.Mo.1981), for the proposition that § 365(c)(2) does not prohibit the assumption of a financial accommodation contract if both the trustee and the lender wish the contract to be assumed. The *Prime* court noted that both the debtor and CIT wished to continue the accounts receivable financing post-petition as it had been conducted pre-petition, and also correctly observed that '[r]ead literally [section 365(c)(2)] prohibits assumption whether the creditor consents or not.' *Id.* at 218 (citation omitted). The court went on, however, to review various general provisions of the Bankruptcy Code permitting the trustee (or debtor in possession) to operate the debtor's business and incur debt, and concluded that 'it is apparent that the Congress intended business under reorganization to proceed in as normal a fashion as possible.' *Id.* at 219 (citation omitted). The court noted the importance of debt financing to the debtor's financial survival, and concluded:

> The statutory pattern permits the inference in the language of Section 365(c)(2) that the trustee may assume a contract for debt financing if the creditor consents. Here, the creditor having consented, the arrangement is lawful.

*Id.* at 219.

"We find this reasoning unconvincing. When the words of a statute are unambiguous, the court's inferences should not override the plain language of the statute. *Ex parte Collett,* 337 U.S. 55, 61 [69 S.Ct. 944, 947, 93 L.Ed. 1207] ... (1949); *Carlson v. Comm'r,* 712 F.2d 1314, 1315 (9th Cir.1983). Section 365(c)(2) unambiguously prohibits the assumption of financial accommodation contracts, regardless of the consent of the non-debtor party.

"In any event, we disagree with the *Prime* court's inferences. As the court in *Placid Oil* observed, § 365 is designed to protect not only the interests of the parties to the executory contract in question, but

---

**2.** Sections 549 and 1129(b)(2)(B) (the absolute priority rule) generally prohibit the payment of one unsecured claim in full when other unsecured claims are not, absent the consent of the other unsecured creditors. *See also In re FCX, Inc.,* 60 B.R. 405, 410–12 (E.D.N.C.1986).

**3.** Section 365(b)(1) provides in pertinent part:

> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default. ...

also the interests of all of the creditors.[4] 72 B.R. at 139. The assumption of financial accommodation contracts may have considerable impact on creditors who are not parties to the contract since assumption may entitle the non-debtor party to a distribution of estate assets on account of any pre-petition default, and to a priority claim on account of any post-petition default. The fact that § 365(c)(2) is not dependent on the potential lender's lack of consent is therefore consistent with the policy of the Bankruptcy Code. If the lender is willing to provide post-petition financing, then section 364, with its separate and extensive provisions concerning post-petition financing of the debtor, and its attendant protections for creditors other than the lender, is the proper vehicle for such a financing arrangement.

"Section 364

■ "[Transamerica] argue[s] that even if the bankruptcy court erred in holding that the [a]greement was an assumable executory contract, the bankruptcy court's order was authorized under § 364 concerning post-petition financing.

"In ordering assumption of the [a]greement as an executory contract, the bankruptcy court ordered that the debtor cure all defaults under the [a]greement. The cure included the payment of approximately $175,000 in payment defaults. Section 365 provides for the cure of defaults upon the assumption of an executory contract, but as discussed above, we hold that § 365 does not apply in this case. While § 364 authorizes the grant of priority or a security interest in estate assets in order to provide some assurance to post-petition lenders, the assurances so authorized do not

include payment of pre-petition unsecured debt with estate assets. There is no other applicable provision in the Bankruptcy Code authorizing the debtor to pay certain pre-petition unsecured claims in full while others remain unpaid.[5] To do so would impermissibly violate the priority scheme of the Bankruptcy Code. *See In re FCX, Inc.*, 60 B.R. 405, 410–12 (E.D.N.C.1986).

"[Transamerica] argue[s] that some bankruptcy courts have allowed 'cross-collateralization' under § 364 where absolutely necessary to enable the debtor to obtain necessary post-petition financing, and that by analogy the outright payment of pre-petition unsecured claims should be permitted in that context.[6] The only authority from this jurisdiction cited by [Transamerica] approving cross-collateralization is *In re Adams Apple, Inc.*, 829 F.2d 1484 (9th Cir.1987). The court in *Adams Apple* held only that where the bankruptcy court grants cross-collateralization under § 364, post-petition credit is extended to the debtor in reliance thereon, an appeal is taken, and no stay pending appeal is sought, § 364(e)[7] renders the appeal moot because even reversal would not affect the post-petition lender's rights. *Id.* at 1488. The court explicitly declined to rule whether the Bankruptcy Code authorizes cross-collateralization. *Id.* at 1488–89, n. 6.

"We also decline to rule whether cross-collateralization is appropriate in this case, or whether as a matter of law it is ever permissible. In its oral ruling the court below stated:

[T]he 9th Circuit Court of Appeals has made it quite clear to me in the Adams Apple case, which was one of my cases, that cross-collateralization, or, if you

---

4. For example, under section 365(a) court approval must be obtained for the assumption of a contract even if the parties to the contract consent to assumption.

5. Section 510(c) does provide for equitable subordination of claims, but that doctrine has been neither raised nor implicated in this case.

6. Cross-collateralization means granting a security interest in post-petition assets to secure pre-petition debts.

7. Section 364(e) provides:

The reversal or modification on appeal of an authorization under this section to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

will, the use of financing to pay a prepetition unsecured debt is to be used only in extreme cases.

And I think to my recollection the Adams Apple case is about the only case where I have previously permitted that. I felt there were compelling circumstances in that particular case. I'm not sure that that's not the situation that we're really faced with here.

. . . . .

But viewing substance over form, I'm not going to require the parties to redo all the paper work at this point. And I will approve it as the assumption of an executory contract.

The parties did not argue to the bankruptcy court whether cross-collateralization was appropriate to induce Transamerica to extend financing under § 364, and the bankruptcy court explicitly did not reach that issue, making its ruling on the legal basis presented to it, *i.e.*, § 365. We do not know what legal standard the bankruptcy court would have applied, or whether the bankruptcy court would have found facts warranting cross-collateralization, had that issue been presented to it. Thus the question of whether the bankruptcy court would have allowed cross-collateralization under § 364 is hypothetical, and the bankruptcy court's order cannot now, ex post facto, be justified on that basis.[8]

 "This appeal is not moot under *Adams Apple*. First, the order appealed here has prospective effect as to the administration of the estate because it provides for ongoing financing under the terms of the [a]greement. Second, § 364(e) does not shield any cure payments from the effect of our reversal of the appealed order. Sec-

tion 364(e) explicitly applies only to 'an authorization *under this section* to obtain credit or incur debt, or … a grant *under this section* of a priority or a lien' (emphasis added). Transamerica sought and the bankruptcy court ordered the cure payments under § 365, not § 364, and therefore those payments are not protected by § 364(e). The same is true for any other claims, priorities, liens, or other benefits granted Transamerica under the appealed order, excepting only the provisions of paragraph 3 of the appealed order,[9] which specifically invokes § 364(b).

## CONCLUSION

"From the transcript of the proceedings below, it is clear that the bankruptcy court's ruling was a pragmatic one, directed toward permitting the maintenance, post-petition, of existing arrangements for dealer financing. *See* fn. 4, *supra*. The debtor and the court considered the financing provided by Transamerica to be vital to the reorganization effort. Transamerica used the resulting bargaining power to require the repayment of its pre-petition unsecured claim as a condition to post-petition financing. Because § 364 does not authorize post-petition financing on those terms, Transamerica and the debtor sought approval of post-petition financing under § 365 in order to make use of the cure provisions of that section. Section 365(c)(2) prohibits such an 'end run' around § 364."

## SUMMARY

We vacate that portion of the BAP opinion holding that the flooring agreement is not an executory contract (*see In re Sun Runner Marine, Inc.*, 116 B.R. 712, 716

---

**8.** Nor do we decide whether the post-petition payment of pre-petition unsecured claims would be permissible even if the law and the facts did warrant cross-collateralization.

**9.** That paragraph provides:

The parties hereby stipulate that any unsecured debt incurred by Transamerica as a result of assumption of the Flooring Agreement is a credit accommodation pursuant to 11 U.S.C. § 364(b) and shall constitute an administrative expense pursuant to the terms of 11 U.S.C. § 503(b)(1).

It is not clear, either from the language of this paragraph, or from the remainder of the record before us, to what this paragraph refers. It appears to refer narrowly to any new funds extended by Transamerica to the debtor post-petition, on an unsecured basis. The record before us does not disclose whether Transamerica holds any claims that fall within the intended scope of this paragraph, and therefore we do not decide whether section 364(e) has any application in this case.

(9th Cir. BAP 1990)), and affirm the BAP's alternate holding that assumption of the flooring agreement is precluded by Bankruptcy Code § 365(c)(2) which bars assumption of financial accommodation contracts.

BAP opinion VACATED in part and AFFIRMED in part. Appellee shall recover its costs on appeal.

---

\* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).