**In re EMERALD FOREST CONSTRUCTION, INC., Debtor.**

**Bankruptcy No. 98–32786–11.**

United States Bankruptcy Court,
D. Montana,
Butte Division.

Nov. 12, 1998.

Harold Van Dye, Dye & Moe, P.L.L.P., Missoula, MT, for Debtor–in–Possession.

Lowell P. Bottrell, Anderson & Bailly, Fargo, ND, George D. Goodrich, Garlington, Lohn & Robinson, PLLP, Missoula, MT, for RDO Equipment.

## ORDER

JOHN L. PETERSON, Chief Judge.

In this Chapter 11 bankruptcy RDO Equipment ("RDO") filed a motion for relief from the stay on October 14, 1998, seeking possession of equipment, a screen plant and conveyor, which it leased to the Debtor–in–Possession ("DIP") under an "Equipment Rental Agreement" (hereinafter the "lease"). The DIP filed an opposition to RDO's motion and filed a "motion to assume executory lease/purchase agreement" on October 19,

1998, to which RDO objects[1]. After due notice hearing on these matters was held at Missoula on October 27, 1998. The DIP was represented at hearing by counsel Harold Van Dye ("Dye"), who stipulated that the DIP does not have the ability to make an immediate cure of the DIP's default under the equipment lease with RDO, but nevertheless wishes to assume the lease, to exercise its option to purchase the leased equipment, and to restructure the balance of the unpaid option price in its Chapter 11 Plan. Dye also stated that in the event the Court denies DIP's motion to assume the lease, DIP consents to RDO's motion to modify the stay. James Gandara, Debtor in Case No. 98–32067–11 and an officer of the DIP, testified. No exhibits were admitted into evidence at the hearing.[2]

At the close of the hearing the Court granted the DIP five days to file a memorandum of law providing authority for DIP's proposal to restructure the purchase option of the lease pursuant to 11 U.S.C. § 1123(b)(5)[3]. The DIP's brief has been filed and reviewed by the Court.[4] For the reasons set forth below, based upon the DIP's stipulation that it cannot promptly cure the default in the lease, the DIP's motion to assume executory lease/purchase agreement is denied, and RDO's motion for relief from the stay is granted.

## BACKGROUND

Emerald Forest Construction, Inc. (DIP) filed a voluntary Chapter 11 petition on September 28, 1998, executed by Corinna Gandara[5], president. The Schedules and Statements were filed with the petition. At Schedule D the DIP lists RDO Financial Service as a secured creditor based upon a "lease purchase option" of a conveyor and "Protec Screen plants". RDO is listed as having a fully secured claim in the amount of $85,000. RDO has not filed a Proof of Claim.[6] DIP's Schedule G lists RDO as a party to a lease or contract described by the DIP as "Equipment lease with purchase option".

The equipment lease between Emerald Forest Construction[7] and RDO was executed

---

1. These same matters were filed and heard in *In re James David Gandara and Corinna Carmen Gandara*, Case No. 98–32067–13, wherein RDO filed a motion to assume or reject executory contract or unexpired lease, and filed a motion to terminate stay. The Gandaras converted their case to Chapter 11 by motion granted October 1, 1998, after which the Gandaras filed a motion to assume executory lease/purchase agreement on October 21, 1998, in Case No. 98–32067–11. Gandaras have also filed on October 7, 1998, a *motion to substantively consolidate Case No. 98–32067–11 with No. 98–32786–11.*

2. The equipment rental agreement is attached to the Debtors' response to RDO's motion to assume or reject lease filed August 26, 1998, in No. 98–32067–13 as Exhibits 2 and 3; and is attached to RDO's motion to assume reject, filed August 24, 1998, in No. 98–32067–13, as Exhibit A. For the purposes of DIP's motion to assume which is decided herein, the material terms of the equipment lease are the same.

3. Section 1123(b)(5) provides that a plan may— "(5) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims".

4. DIP's post-hearing brief cites no case law construing § 1123(b)(5) in a manner that would

enable it to restructure the purchase option in a Chapter 11 Plan as it proposes, and the Court is aware of none. DIP cites only *In re Shockley*, 14 Mont. B.R. 265, 269 (Bankr.Mont.1995), and *Griffel v. Murphy*, 839 F.2d 533, 536 (9th Cir. 1988) for the general definition of an executory contract. *See In re Robert L. Helms Const. & Development Co., Inc.*, 139 F.3d 702, 705 (9th Cir.1998).

5. Corinna Gardara and James Gandara filed a voluntary Chapter 13 case, No. 98–32067–13, on July 22, 1998.

6. F.R.B.P. 3003 applies in Chapter 11 cases with respect to the filing of a Proof of Claim. Rule 3003(b) provides: "The schedule of liabilities filed pursuant to § 521(a) of the Code shall constitute prima facie evidence of the validity and amount of the claims of creditors, unless they are scheduled as disputed, contingent, or unliquidated. It shall not be necessary for a creditor . . . to file a proof of claim or interest except as provided in subdivision (c)(2) [not applicable] of this rule."

7. The Gandaras argue that the DIP is simply a shell corporation and that they are the correct parties to the equipment rental agreement under their d/b/a Emerald Forest Construction. Of course, whether the Gandaras or the DIP are the correct party to the equipment rental agreement is totally irrelevant to whether either may assume

on May 8, 1998, and calls for monthly rental payments in the total amount of $5,700.00 for the screen plant and conveyor. Only one partial lease payment in the sum of $4,617.35 has been made. The lease is in default to date in the sum of at least $29,582.65 [8]. The DIP admitted at hearing that it cannot immediately cure the default.

The lease contains a purchase option which states: "Upon or before expiration of the rental term, Lessee may elect to purchase the Equipment for the "Total Present Value" specified on this Rental Agreement, and may apply to such purchase price 85% of all rentals previously paid. An election to purchase will be evidenced by execution of a purchase order form supplied by Lessor [RDO]."

## CONTENTIONS OF THE PARTIES

RDO filed its motion for relief from the stay on October 14, 1998, based upon the DIP's default under the lease, contending DIP lacks of equity and has no realistic possibility of and effective reorganization, and that it lacks adequate protection because the resale market for its equipment is declining. RDO contends the Gandaras are abusing the bankruptcy process by using the DIP, an admitted shell corporation, to obtain the benefits of the automatic stay without paying the monthly lease payments. RDO wants immediate possession of its equipment. RDO argues that the DIP cannot assume the lease without first promptly curing all default under 11 U.S.C. § 365(b)(1), citing *In re LCO Enterprises* ("*LCO*"), 12 F.3d 938, 941 (9th Cir.1993). RDO contends the DIP may not rewrite the lease purchase option to restructure it over time because it must accept or reject the lease as a whole, citing *In re Great Northwest Recreation Center, Inc.*, 74 B.R. 846, 854 (Bankr.Mont.1987). Finally, RDO contends the lease is not subject to assumption because it is a financial accommodation

contract, the assumption of which is prohibited under § 365(c)(2) [9].

The DIP filed its "motion to assume executory lease/purchase agreement" on October 19, 1998. DIP admits that it is a shell corporation of the Gandaras, but that they are willing to pay RDO adequate protection payments of $1,000 per month, subject to review. DIP proposes to exercise the purchase option of the equipment which is contained in the lease, but to restructure it over time in its Chapter 11 Plan pursuant to § 1123(b)(5) over "a reasonable period of time at a market rate of interest." DIP contends that once it exercises its purchase option the lease becomes non-executory, and subject to restructure.

## DISCUSSION

### I. Assumption of an Unexpired Lease— § 365(b)

■ The equipment lease between the parties is an unexpired lease with an option to purchase. Under 11 U.S.C. § 365(a), a debtor may assume the obligations of an executory contract or unexpired lease subject to the bankruptcy court's approval. *In re Texscan Corp.*, 976 F.2d 1269, 1271 (9th Cir. 1992); *In re Woodtech, Inc.*, 13 Mont. B.R. 59, 64 (Bankr.Mont.1993). However,

if there has been a default in an executory contract or unexpired lease, then the requirements of § 365(b)(1) come into play. Section 365(b)(1) states:

(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

---

the unexpired lease, which they stipulate is in default. Whichever of them is the lessee, the equipment lease is in default.

8. DIP's brief filed November 4, 1998, admits to a default of $23,882.65. Another $5,700 payment was due on November 8, 1998, making the total default to date $29,582.65.

9. Section 365(c)(2) provides that an executory contract or unexpired lease of the debtor may not be assumed if "(2) such contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor, or to issue a security of the debtor".

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default;

(C) provides adequate assurance of future performance under such contract or lease.

*In re Windmill Farms, Inc.,* 841 F.2d 1467, 1473 (9th Cir.1988); *In re Sigel & Co.,* 923 F.2d 142, 144-5 (9th Cir.1991). *Woodtech,* 13 Mont. B.R. at 64.

■ The DIP admits that it is in default of the lease. The default is now $29,582.65. The DIP's memorandum contends that it is only required to pay $3,582.40 in order to cure. The Court finds this amount is inadequate to cure the default. DIP argues that it needs to pay only $3,582.40 because it is exercising its option to purchase, and that "[o]nce the purchase option is exercised the only default is the fifteen percent of the lease arrearages not subsumed in the option price." DIP misinterprets the language of the purchase option.

The purchase option provides that upon election to purchase the lessee "may apply to such purchase price 85% of all rentals previously paid." The DIP has only paid $4,716.35 in "rentals previously paid". The purchase option permits the DIP to apply 15% of $4,617.35, or $692.60, to the $75,000 purchase price. Dye's interpretation of the option provision attempts to reward the DIP for paying RDO less than 1 monthly payment since May of 1998. The Court rejects Dye's interpretation of the purchase option as utterly without merit. Given the admitted default, DIP's admission that it cannot promptly cure the default, and the absence of any evidence other than the DIP's assertions that it has the ability to cure or provide adequate assurance of cure and future performance, the Court finds that the DIP has failed to satisfy the requirements of § 365(b)(1).

The DIP has alternatively characterized RDO at times as a secured creditor and at times as a lessor. The difference in treatment of a secured creditor and a lessor under bankruptcy law is discussed in *LCO,* 12 F.3d at 941. In *LCO* the Ninth Circuit explained:

Similarly, on the date of the filing, a secured creditor's claim is fixed in amount, the value of the security as of that date can be ascertained and the claim will be either fully or partially secured. The debtor's lessor, however, stands in a different position. Although the amount of the debtor's prepetition default under the lease may be fixed on the date of the filing, the status of the lessor's right to payment from the estate is not yet fixed. That is because the lessor's position relative to other creditors depends on whether the lease is assumed or rejected. If the lease is assumed, the lessor is entitled to prompt payment in full of any default under the lease, and the debtor is entitled to continued use of the property. 11 U.S.C. § 365(b). If the lease is rejected, the lessor is entitled to immediate possession of his property and holds an unsecured claim for the unpaid rent. *See In re Elm Inn, Inc.,* 942 F.2d 630, 633-34 (9th Cir.1991).

More importantly, in this case the difference between assumption and rejection determines the outcome of the preference action. If the lease is assumed, the debtor must cure any default. 11 U.S.C. § 365(b). Thus, if rent payments had not been made prepetition, they had to be made at the time of assumption. LCO had to pay Lincoln the full amount of rent (or any lesser amount to which Lincoln agreed) either prepetition or at the time of assumption.

12 F.3d at 941.

The DIP in the instant case has not offered prompt cure of the default. DIP contends that it is only obligated to pay $3,582.40 of the $23,882.65 default it admits, in order to cure. The Court finds such amount is woefully inadequate to cure, under the rule of *LCO* quoted above, even with DIP's offer of $1,000 adequate protection payments.

The rule stated in *LCO* with regard to assumption under § 365(b) is not new. This Court wrote in *In re Vincent Logging, Inc.,* 11 Mont. B.R. 452, 461 (Bankr.Mont.1992):

It is well settled ever since this Court's Order in [*In re Big Sky Transportation*

*Co.,* 7 Mont. B.R. 424 (Bankr.Mont.1989) ] that assumption of an executory contract or unexpired lease entails assumption of both the benefits and the burdens thereof. *In re Rachels Industries, Inc.,* 109 B.R. 797, 803 (Bankr.W.D.Tenn.1990). Thus, it has been held that upon assumption, "the estate becomes liable for performance of the entire contract, as if bankruptcy had never intervened." 109 B.R. at 803; *In re Leon's Casuals Company, Inc.,* 122 B.R. 768, 771 (Bankr.S.D.Ala.1990). The lease must by [sic] assumed as a whole or rejected as a whole. *In re Caravansary, Inc.,* 67 B.R. 469, 473 (9th Cir. BAP 1986) (Citations omitted).

\* \* \* \*

When attempting to assume under § 365, a Debtor must cure both prepetition and post-petition defaults. *In re Rachels Industries, Inc.,* 109 B.R. 797, 812–813 (Bankr.W.D.Tenn.1990); *In re Berkshire Chemical Haulers, Inc.,* 20 B.R. 454, 457 (Bankr.D.Mass.1982); *In re Robinson Truck Line, Inc.,* 47 B.R. 631, 636–637 (Bankr.N.D.Miss.1985).

In the instant case the DIP does not propose to cure both prepetition and post-petition defaults upon assumption. Instead, it proposes to pay only $3,582.40 of a default which it admits has reached $23,882.65, and to restructure the outstanding purchase price in a Chapter 11 plan not yet filed. The Court finds that the DIP has failed to satisfy the requirements of § 365(b) for prompt cure of prepetition and post-petition default upon assumption. Pursuant to *LCO,* the DIP's motion shall be denied, and RDO is entitled to immediate possession of its property and an unsecured claim for the unpaid rent. 12 F.3d at 941.

## II. § 365(c)(2)—Financial Accommodation Contracts

 RDO argues that the DIP's motion to assume lease must be denied under § 365(c)(2) because the lease is a financial accommodation contract, the assumption of which is prohibited by § 365(c)(2). *In re Sun Runner Marine, Inc.* ("*Sun Runner*"), 945 F.2d 1089, 1091–92 (9th Cir.1991). "Financial accommodation" is defined as the extension of money or credit to accommodate another. *Id.,* 945 F.2d at 1092 (citing cases). However, courts strictly construe the terms "loan", "debt financing" and "financial accommodation" narrowly, and § 365(c)(2) does not apply to all contracts that involve the extension of credit. *In re Thomas B. Hamilton, Co., Inc.* ("*Hamilton*"), 969 F.2d 1013, 1018–19 (11th Cir.1992); 3 Lawrence P. King, *Collier on Bankruptcy,* ¶ 365.06[2] (15th ed.1998).

In the instant case the equipment lease is not a financial accommodation contract, the assumption of which is prohibited by § 365(c)(2). The primary purpose of the lease is not the extension of credit. Rather any credit extended is only incidental to the larger purpose of the lease, to lease equipment with an option to purchase. *Hamilton,* 969 F.2d at 1019. By contrast, the agreement in *Sun Runner* was a flooring agreement which clearly contemplated extension of money or credit in the form of loans which were actually made to the debtor, and was thus within the purview of § 365(c)(2). 945 F.2d at 1092.

## III. § 1123(b)(5)—Restructure the Purchase Option

The DIP's main argument in support of assumption, notwithstanding its stipulation it cannot cure the default in the equipment lease, is that it is exercising its purchase option of the equipment, and will restructure the purchase price in its Chapter 11 Plan pursuant to § 1123(b)(5) over "a reasonable period of time at a market rate of interest." DIP contends that once it exercises its purchase option the lease becomes non-executory, and subject to restructure. There are several problems with DIP's premise.

First, DIP proposes to restructure the purchase option notwithstanding its inability to cure the default in monthly lease payments. Also, DIP cannot promptly pay RDO the option purchase price, 85% of the "Total Present Value" of $75,000. Despite this inability to pay and to satisfy the requirements for assumption, DIP argues that by merely asserting that it is exercising its option to purchase the equipment, it may modify

RDO's rights pursuant to § 1123(b)(5), notwithstanding § 365(b). DIP's counsel was invited to research this issue and provide the Court with authority which supports DIP's proposed construction of § 1123(b)(5), but DIP's memorandum is devoid of such authority.

With the conclusion above that the DIP failed to satisfy § 365(b), the Court will not construe § 1123(b)(5) in a manner which supersedes the requirements of § 365(b). The Supreme Court advises in *Rake v. Wade,* 508 U.S. 464, 471–72, 113 S.Ct. 2187, 2192, 124 L.Ed.2d 424 (1993):

> We generally avoid construing one provision in a statute so as to suspend or supersede another provision. To avoid "deny[ing] effect to part of a statute," we accord " 'significance and effect ... to every word,' " *Ex parte Public Nat. Bank of New York,* 278 U.S. 101, 104, 49 S.Ct. 43, 73 L.Ed. 202 (1928) (*quoting Washington Market Co. v. Hoffman,* 101 U.S. 112, 115, 25 L.Ed. 782 (1879)).

To give effect to every word of § 365(b)(1), the Court rejects DIP's argument that it may restructure RDO's claim pursuant to § 1123(b)(5) notwithstanding its inability to satisfy the requirements for assumption under § 365(b)(1).

The DIP's contention that exercising its purchase option terminates the lease and leaves the DIP with a non-executory obligation to pay the purchase price in a plan pursuant to § 1123(b)(5) is also unsupported by the facts and law. Formerly the rule in the Ninth Circuit was that all options were executory contracts. *Gill v. Easebe Enterprises, Inc. ("Easebe"),* 900 F.2d 1417, 1419 (9th Cir.1990). However, in *In re Robert L. Helms Const. & Development Co., Inc. ("Helms"),* 139 F.3d 702, 706 (9th Cir.1998), the Ninth Circuit rejected *Easebe's* broad rule, and looks to outstanding obligations at the time the petition for relief is filed and asks whether both sides must still perform. The DIP's argument that its mere assertion that it is exercising its purchase option, without paying, renders the lease non-executory, is shown to be without merit by the Ninth Circuit's explanation: "An option may on occasion be an executory contract, for instance, where the optionee *has announced that he is exercising the option, but not yet followed through* with the purchase at the option price." *Helms,* 139 F.3d at 706 (emphasis added). In the instant case the DIP has announced, but has not followed through. The lease and purchase option remain executory and subject to the requirements of § 365(b)(1), which the DIP has not satisfied.

IT IS ORDERED the DIP's motion to assume executory lease filed October 19, 1998, is denied; the motion to modify stay filed by RDO Equipment on October 14, 1998, is granted; the stay is modified and the DIP shall immediately surrender to RDO possession of the screen plant and conveyor equipment leased by the DIP and/or by James David Gandara and Corinna Carmen Gandara, d/b/a Emerald Forest Construction, from RDO under the terms of the Equipment Rental Agreement between the parties.