**In re WHITEPRIZE, LLC, Debtor.**

**No. 01–3167–ECF–SSC.**

United States Bankruptcy Court,
D. Arizona.

Jan. 9, 2002.

869

John J. Hebert, Hebert Schenk P.C., Phoenix, AZ, for Debtor.

## MEMORANDUM DECISION ON CREDITORS' MOTION REGARDING NONASSUMABILITY

SARAH SHARER CURLEY, Chief Judge.

### I. *Preliminary Statement.*

On November 20, 2001, counsel for Andrew C. Chang and Mary M. Chang filed a Motion for Determination that Vacant Land Sale Contract is a Nonassumable Financial Accommodation [1]. The Motion also included a request that if the Court agreed the Contracts could not be assumed, the stay be vacated. On November 22, 2001, counsel for numerous parties known as the "Stans Parties" [2] also filed a similar Motion [3]. On December 3, 2001, counsel for the Baluco Trust and separate counsel for JAJ, L.L.C. [4] also joined in the aforesaid Motions. On December 3, 2001, the Debtor filed an interim response, objecting to the relief requested. A hearing was conducted on December 3, 2001, at

---

1. Docket Entry No. 200. If appropriate, the Court will refer to the Changs, or the other named sellers, collectively as "Creditors" for purposes of this Decision.

2. The Stans Parties are: The Kerber Revocable Trust, NJ & KG Dreher Trust, The Estate of Maurice Stans, The Geraldine L. Engle Trust, the Judie G. Hyslop Living Trust, The 3–H Family Trust, and the Lenz Estate Trust.

3. Docket Entry No. 212.

4. Docket Entries No. 221 and 222.

which time the parties presented argument. Although the Debtor labeled its Response as "interim," no further pleading has been filed.

An evidentiary hearing is scheduled on the Debtor's Motion to Determine Whether or Not Land Sale Contracts Are Executory/Motion to Extend Time to Assume/Motion to Assume Executory Contracts for January 9, 2002 ("Motion to Assume.")[5] However, such a hearing is now unnecessary as a result of this Decision. The Court will rule on the Creditors' Motions without a further hearing. The Court has set forth its findings of fact and conclusions of law pursuant to Fed. R.B.P. 7052. This is a core proceeding, and the Court has jurisdiction over this matter. 28 U.S.C. §§ 1334 and 157.

## II. *Factual Discussion*

On September 25, 2000, the Changs accepted a Vacant Land Purchase Contract, with Deborah Quaid, a licensed Arizona realtor, and/or nominee listed as the buyer. The purchase price for in excess of 63 acres of vacant land was $378,000, with a $5,000 earnest money deposit given at the time of acceptance of the contract by the sellers. The sum of $95,000 was to be paid at close of escrow, and the Changs were to provide $278,000 in seller carryback financing. The contract provided for a closing on November 6, 2000. On October 4, 2000, the Changs agreed to accept JOFU, L.L.C., an Arizona limited liability company, as the buyer; and on October 5, 2000, the Changs accepted an additional $5,000 as an earnest money deposit to be applied in reduction of the purchase price.

On November 21, 2000, the Changs agreed to extend the close of escrow to January 31, 2001 and accepted another payment of $5,000, nonrefundable and immediately payable to the Changs, for such an extension. This payment was in reduction of the purchase price. The Fullers, listed as members of JOFU, agreed to the same extension of the closing date.

On January 31, 2001, the Changs and JOFU entered into a Second Amendment to the aforesaid Vacant Land Purchase Contract. This Amendment allowed the buyer to extend the close of escrow for up to two, thirty-day periods by payment of additional moneys prior to the proposed closing date. The buyer was required to pay $3,000 for each extension. Again, any extension payment was nonrefundable, to be paid immediately to the Changs, and was *not* in reduction of the purchase price.

On March 18, 2001, two days before the Debtor filed its Chapter 11 petition on March 20, 2001, JOFU, L.L.C. assigned its rights under the Vacant Land Purchase Contract to the Debtor.[6] The Changs did not consent to this assignment.

As to the Stans Parties, they have an interest in six separate parcels, or 296 acres, of vacant land. Concerning Parcels 1 and 2, the Stans Parties entered into a contract with Curtis Christensen and/or nominee as purchaser. The Contracts provided for an initial close of escrow on September 13, 2000, which (through various documents) was extended to April 5, 2001. The Contracts also provided for substantial seller carrybank financing. The Stans Parties did not consent to the assignment of the contract to the Debtor.

As to Parcels 3, 4, 5 and 6, a different individual was designated the buyer as to each parcel. In turn each individual had

5. Docket Entries No. 26 and 28.

6. For purposes of the Creditors' Motion, the Court will assume this was a valid assignment. Previously, the Creditors questioned whether Gary Yanke, who signed the assignment, was a proper party to do so on behalf of JOFU.

the ability to assign it to a nominee. Through various extensions, the contract as to each parcel was also to have a close of escrow of April 5, 2001. Finally, the Stans Parties agreed to provide substantial seller carryback financing as to Parcels 3, 4, 5 and 6. The Stans Parties did not consent to an assignment of the Contracts to the Debtor as to said Parcels.[7]

For purposes of the Creditors' Motions, the Court has summarized the parties, the purchase prices and the financing as follows:

|  | Financing | Purchase Price |
|---|---|---|
| The Changs | $278,000 | $378,000 |
| The Stans Parties |  |  |
| Parcel 1 | $7 7,880 | $9 7,350 |
| Parcel 2 | $179,667.20 | $213,334 |
| Parcel 3 | $336,160 | $420,200 |
| Parcel 4 | $352,000 | $440,000 |
| Parcel 5 | $176,000 | $220,000 |
| Parcel 6 | $176,000 | $220,000 |

It is unclear as to the underlying transactions concerning Baluco and JAJ. The particular contracts involving these parties were not attached to their Joinder Motions. Moreover, these parties set forth very few undisputed facts applicable to them. However, according to the Debtor's Motion to Assume, the Debtor does not dispute that it is the assignee of certain vacant land sale contracts concerning the Baluca Trust and JAJ as the sellers.[8] The Debtor also does not dispute that the Balco Trust and JAJ also provided significant financing to the buyers as a part of the Contracts to sell certain parcels of real property.

## III. Issues

A. Whether the Creditors have waived their ability to raise the financial accommodation argument.

B. Whether the Debtor and the Creditors have entered into contracts concerning financial accommodations which may not be assumed.

## IV. Legal Discussion

### A. Waiver

■ The Debtor's initial concern focuses on whether the Creditors may now raise an issue concerning the inability to assume a financial accommodation.

The Debtor believes that since the current issue was not raised in the earlier responses, the Creditors are now precluded from questioning whether the contracts are nonassumable as financial accommodations. In a similar vein, the Debtor also points out that an evidentiary hearing was to be conducted on the Debtor's Motion to Assume on January 9, 2002, and at least as of December 3, 2002, the financial accommodation or nonassumability issue was not raised in the proposed Joint Pretrial Statement; therefore, the Creditors have waived the argument.

At the December 3, 2001 oral argument on the Creditors' Motions, the Creditors stated there had been no waiver, since the Debtor had raised different issues in its Motion to Assume. The Creditors also noted that the Joint Pretrial Statement was not yet due. At a hearing on January 3, 2002 on a different matter, the same parties stated that the Joint Pretrial Statement on the Motion to Assume was about to be filed, and the Creditors requested a ruling on these current issues prior to the January 9, 2002 trial.[9]

---

7. For purposes of this Motion, the Court will again assume that the assignments to the Debtor were valid.

8. Docket Entry No. 26, Exhibit 1. From the Court's review of the Debtor's Schedules and Docket Entry No. 26, the only seller which did not join in the Creditors' Motion is MW &

NLOW. However this Court's ruling should equally apply to this seller absent exceptional circumstances.

9. On January 8, 2002, the parties were notified that the January 9, 2002 hearing was vacated. The Court stated that it would issue its decision on the Creditors' Motions shortly.

The Creditors correctly note that there can be no waiver of the nonassumability issue based on this record. The Debtor's Motion to Assume focused on whether the Debtor had entered into executory contracts with these Creditors, and if so, whether those Contracts might be assumed. The Debtor argued that the Contracts might be within the parameters of 11 U.S.C. § 365(d)(4).[10] The Creditors' initial position was that there were no executory contracts to be assumed, since the various Creditors had entered into Contracts with specific individuals or entities (or their nominees), and there had been no proper transfer of the underlying Contracts to the Debtor. As a result, the Creditors viewed the Contracts, and any rights which might be derived therefrom, as *not* being property of the bankruptcy estate.

The Creditors' current position is very different. They believe that whether the Contracts are executory or not is irrelevant. The Contracts are financial accommodations which may not be assumed as a matter of law.

On the waiver issue, the Ninth Circuit, in the decision of *Transamerica Commercial Finance Corporation v. Citibank, N.A. (In re Sun Runner Marine, Inc.)*, 945 F.2d 1089 (9th Cir.1991) adopted the reasoning of the Bankruptcy Appellate Panel that if 11 U.S.C. § 365(c)(2) were applied to a new transaction, the consent of the debtor and the creditor to the financial accommodation was irrelevant. *Id.* at 1092–1094. In a similar fashion, and given the specific language of Section 365(c)(2) that certain contracts or agreements are *not* assumable, it follows that the Court has no discretion to allow an assignment if these Contracts are within the parameters of the Subsection. This type of issue, given the specific statutory provision and, hence, this Court's limited, but independent review, would militate against any waiver argument by the Debtor. In any event, the Debtor has only had an initial hearing on confirmation of its plan and has agreed that the contested confirmation hearing should occur in April 2002. The Debtor has consistently proposed obtaining new financing to effectuate its Plan of Reorganization. However, that financing has not yet been finalized. Therefore, given the Debtor's current posture in this case as to a lack of permanent financing, the Court will allow the Creditors to raise this new issue.

## B. The Financial Accommodations

As to the issue of whether the Creditors are providing financial accommodations to the Debtor which may not be assumed, the Court must initially review 11 U.S.C. § 365(c)(2), (West 2001).[11] However, a review of the Bankruptcy Code does not

---

**10.** 11 U.S.C. § 365(d)(4) (West 2001) provides:

(d)(4) Notwithstanding paragraphs (1) and (2), in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

Pursuant to Section 1107 of the Code, the reference to "trustee" in this and other Code Sections cited in this Decision applies equally to this Debtor who is still in possession of its property.

**11.** (c) The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—

(2) such contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor, or to issue a security of the debtor;

provide any definition of critical terms used in this Subsection, such as "debt financing" or "financial accommodation." A number of Ninth Circuit decisions have clarified the terms.

In the decision of *Gill v. Easebe Enterprises, Inc. (In re Easebe Enterprises, Inc.)*, 900 F.2d 1417 (9th Cir.1990), the debtor had a leasehold interest in certain real property, with an option to purchase. If the debtor exercised the option, the debtor could purchase the property for $800,000, with a cash deposit of $75,000. The lessors agreed to provide the financing. *Id.* at 1418. One of the conclusions of the bankruptcy court was that the option was not assumable as a result of 11 U.S.C. § 365(c)(2). *Id.* at 1418–1419.

■■ The Ninth Circuit agreed. It stated:

> An executory contract that is a contract 'to make a loan, or extend other debt financing or financial accommodations to or for the benefit of the debtor...' may not be assumed by the trustee. [Citations omitted.] 'The purpose of this subsection, at least in part, is to prevent the trustee from requiring new advances of money or other property.' [Citations omitted.] While the Code does not define the terms 'loan,' 'debt financing,' or 'financial accommodations,' it was intended that these terms be strictly construed so as not to extend 'to an ordinary contract to provide goods and services that has incidental financial accommodations or extensions of credit.' [Citations omitted.]

*Id.* at 1419. Moreover, after reviewing the terms and conditions of the financing to be provided by the sellers/lessors and the agreement to purchase the real property, the Ninth Circuit concluded that the financing was not incidental to the purchase of the property. For instance, although title to the real property would be transferred at the time of closing, the debtor

was required to make payments to the sellers/lessors for at least five years. *Id.* The fact that the debtor did not receive any funds from the sellers/lessors was irrelevant. The Ninth Circuit noted that debt financing or other financial accommodations were also within the parameters of Section 365(c)(2) and could not be assumed by a debtor. The fact that the financing was to be secured by a deed of trust on the real property and not on the debtor's ability to repay or financial strength was also irrelevant. *Id.* at 1470.

■■ Having reviewed the terms and conditions of the contracts in this case, this Court notes the similarities between these Contracts and certain provisions in the *Easebe* option. Each agreement provides that the debtor will acquire an interest in real property, with the seller to provide carryback financing that the debtor will repay over a number of years. As to each, the financing is not incidental to the purchase of the real property. As in *Easebe*, the Creditors here acquired deeds of trust on the various parcels of real property, with no funds to be advanced by the Creditors. The essential nature of the transactions here and in *Easebe* is to provide some type of debt financing or financial accommodation to a debtor.

Although the decision of *Unsecured Creditors' Committee v. Southmark Corp. (In re Robert L. Helms Construction and Development Co.)*, 139 F.3d 702 (9th Cir. 1998) further explored the issue of options and whether they were executory contracts and concluded that *Easebe* must be overruled to the extent that its holding concluded all options must be considered executory contracts, the portion of the *Easebe* opinion discussing 11 U.S.C. § 365(c)(2) and the nature of debt financing and financial accommodations was not overruled in the *Helms* decision. This Court sees no reason not to follow the

*Easebe* opinion as to the issue to be addressed in the current Creditors' Motions. In fact, the Creditors have noted that from their standpoint, it is irrelevant for purposes of 11 U.S.C. § 365(c)(2) to determine whether the Contracts herein are executory. This Court agrees. Therefore, the Debtor's attempt to argue the nature of the underlying agreements between the parties does not address the limited, but critical, issue now presented to the Court.

As further support, the Creditors also heavily rely on the decision of *Transamerica Commercial Finance Corporation v. Citibank, N.A. (In re Sun Runner Marine, Inc.)*, 945 F.2d 1089 (9th Cir.1991).[12] Transamerica provided indirect financing to Sun Runner, a manufacturer of boats. Sun Runner relied on a number of dealers to sell its boats to the public. Once Transamerica determined that it would provide financing to the dealer, Sun Runner would deliver the boats to the dealer for a retail sale, and the loan would be secured by a lien on the boat. If the dealer did not repay the loan through the sale of the boat and defaulted on the loan, Sun Runner agreed to guarantee repayment of the loan to Transamerica. Although Transamerica's loans with the dealers were secured, Transamerica's reimbursement agreement with Sun Runner was unsecured. This type of indirect financing arrangement was described in the opinion as a "flooring agreement." *Id.* at 1090.

The Ninth Circuit reviewed 11 U.S.C. § 365(c)(2) and noted that although Sun Runner was secondarily liable in such transactions, serving as a guarantor of the dealers' obligations to Transamerica, such an arrangement was clearly an "indispensable means of financing the debtor's operations." *Id.* at 1092. This type of financing

was clearly a "financial accommodation" within the meaning of Section 365(c)(2) and, hence, could not be assumed postpetition. *Id.* Although a flooring agreement is a different type of financial arrangement than what this Court is analyzing, the *Sun Runner* decision is helpful. In defining a "financial accommodation" as including guarantee obligations and similar indirect financing arrangements, it reflects that the Ninth Circuit has, irrespective of its statements in *Easebe* that the terms "loan," "debt financing," or "financial accommodations" should be strictly construed, focused on whether any type of financing was being provided and whether the financing was not incidental to the agreement between the parties.[13] As to this case, this Court concludes that the *Sun Runner* analysis as to what constitutes a financial accommodation is applicable to the Contracts herein. Clearly, the Creditors provided debt financing or a financial accommodation to their buyers, and the Debtor, through assignment, seeks to have that financing transferred to it. However, 11 U.S.C. § 365(c)(2) simply prohibits that.

## Conclusion

Based upon the foregoing reasoning, this Court concludes that the Creditors' Motions must be granted. The Debtor is unable to assume the contracts pursuant to 11 U.S.C. § 365(c)(2). Since these Contracts may not assumed, and the Debtor has filed no separate objection to vacatur of the stay if the Contracts are nonassumable, the Court will also grant the Creditors' separate Motion to Vacate the Stay under 11 U.S.C. § 362(d)(1) for cause.

---

**12.** The *Sun Runner* opinion also focuses on additional issues, such as consent and the effect on unsecured creditors, which are not at issue here.

**13.** Compare *Easebe* at 1419 with *Sun Runner Marine* at 1092.

The Court will execute a separate Order incorporating this Decision.